STATE of Wisconsin, Plaintiff-Respondent,

v.

Gary Monroe SCULL, Defendant-Appellant.†

Court of Appeals

*No. 2011AP2956–CR. Submitted on briefs November 5, 2013.*
*—Decided January 28, 2014.*

2014 WI App 17

(Also reported in 843 N.W.2d 859.)

† Petition to review granted May 22, 2014.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Basil M. Loeb* of Wauwatosa.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Rebbecca Rapp St. John*, assistant attorney general and *J.B. Van Hollen*, attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Gary Monroe Scull appeals from a judgment of conviction entered following his

guilty plea to one count of possession with intent to deliver more than forty grams of cocaine and to one count of keeping a drug house. Scull argues that the circuit court erred in denying his motion to suppress because the police violated his Fourth Amendment rights when they brought a drug-sniffing dog to the front door of his residence without a warrant or probable cause. After the circuit court denied Scull's motion to suppress, and after Scull filed his notice of appeal, the United States Supreme Court ruled that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *See Florida v. Jardines*, 569 U.S. ___, 133 S. Ct. 1409, 1417–18 (2013). As such, it is clear that the police did, in fact, violate Scull's Fourth Amendment rights when they brought a drug-sniffing dog to his front door without a search warrant or probable cause. Nonetheless, because the police then obtained a search warrant in good faith, although based, in part, on the prior illegal search, we conclude that the good-faith exception to the exclusionary rule applies, and we affirm.

## BACKGROUND

¶ 2. The following facts are undisputed by the parties for purposes of this appeal.

¶ 3. In the summer of 2010, a previously reliable confidential informant advised Milwaukee Police Officer John Wiesmueller that Scull was "involved in the distribution of cocaine base within the City of Milwaukee" and "conducts his narcotics trafficking from . . . a green early nineties Ford Bronco bearing Wisconsin registration plates of 792–NYG." The confidential informant reported to Officer Wiesmueller that Scull "possi-

736

bly resides at 4506 North 42nd Street in the City and County of Milwaukee." (Some formatting altered.)

¶ 4. Officer Wiesmueller followed up on the confidential informant's tip. He was able to verify Scull's address and car as the ones described by the confidential informant. He also learned that Scull had been convicted of robbery with threat of force and first-degree recklessly endangering safety in 2000, and was currently on probation.

¶ 5. Relying on the information from the confidential informant, Milwaukee Police Detective Chris Edersinghe took "Voden," a trained drug-sniffing dog, to Scull's residence. Detective Edersinghe initially walked with Voden to the side door of the residence and then walked to the front door where Voden "alerted." Detective Edersinghe stayed on the walkways to both the side and front doors and did not walk on the grass. The entire episode took less than twenty seconds.

¶ 6. Based upon the information obtained from the confidential informant and Voden's alert, police applied for and obtained a search warrant for Scull's residence. Upon executing the warrant, police found drugs and drug-trafficking paraphernalia.

¶ 7. The State filed a complaint, charging Scull with one count of possession with intent to deliver more than forty grams of cocaine, one count of possession with intent to deliver less than 200 grams of tetrahydrocannabinols (marijuana), and one count of keeping a drug house. The complaint was based upon the evidence obtained during the execution of the search warrant at Scull's residence.

¶ 8. Scull filed a motion to suppress the evidence obtained by the police at his home, arguing that when Detective Edersinghe walked Voden to his front door to see if Voden would alert, the police "invade[d] the

737

curtilage of his home" and performed "a warrantless search into an area in which [Scull] had a reasonable expectation of privacy." Because the search warrant was based in substantial part on Voden's alert, Scull believed the search warrant was invalid. An evidentiary hearing was held on the motion at which Detective Edersinghe briefly testified as the only witness. The circuit court denied the motion.

¶ 9. Scull pled guilty to one count of possession with intent to deliver more than forty grams of cocaine and to one count of keeping a drug house.[1] The circuit court sentenced him to eleven years of imprisonment on the two counts. Scull appeals.[2]

## DISCUSSION

¶ 10. On appeal, Scull asks us to determine whether the act of bringing a drug-sniffing dog to the front door of his residence, without a warrant or probable cause, violated his Fourth Amendment rights.

---

[1] Generally, a defendant who pleads guilty waives all nonjurisdictional defects and defenses. *See County of Racine v. Smith*, 122 Wis. 2d 431, 434, 362 N.W.2d 439 (Ct. App. 1984). However, WIS. STAT. § 971.31(10) (2011–12) creates an exception to this rule, allowing appellate review of an order denying a motion to suppress evidence, notwithstanding a guilty plea. *Smith*, 122 Wis. 2d at 434–35.

All references to the Wisconsin Statutes are to the 2011–12 version.

[2] While Scull originally filed his notice of appeal in December 2011, our decision in this case has been delayed by the United States Supreme Court's decision in *Florida v. Jardines*, 569 U.S. ___, 133 S. Ct. 1409 (2013), and our subsequent request that the parties supplement their briefs following the Court's decision in that case.

The State concedes that the United States Supreme Court, in *Jardines,* recently answered this question "yes."

¶ 11. In *Jardines,* the police received an unverified tip that the defendant was growing marijuana in his home. *Id.,* 133 S. Ct. at 1413. Based on the tip, police approached the front door of the defendant's home with a trained drug-sniffing dog. *Id.* After sniffing the base of the front door, the dog sat, as it was trained to do upon detecting illegal drugs. *Id.* The police and the dog immediately left the scene. *Id.* Relying on the dog's detection of drugs at the residence, police then received and executed a search warrant on the defendant's home. *Id.* Upon execution of the warrant, the police discovered marijuana plants in the residence. *Id.*

¶ 12. The United States Supreme Court held that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1417–18. In so holding, the Court relied on the special protections afforded to the home and the area immediately surrounding the home, that is, a home's curtilage. *Id.* at 1414–15. The Court noted that the front porch is a classic example "of an area adjacent to the home" to which Fourth Amendment protections extend. *See id.* at 1415 (citing *Oliver v. United States,* 466 U.S. 170, 182 n.12 (1984)). The Court went on to explain that while " 'the knocker on the front door is treated as an invitation or license to attempt entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds,' " *see id.* (citation omitted), that traditional invitation does not extend to "a trained police dog to explore the area around the home in hopes of discovering incriminating evidence," *id.* at 1416.

739

"[T]he background social norms that invite a visitor to the front door do not invite him there to conduct a search." *Id.*

■

¶ 13. The parties all agree that *Jardines* controls in this case and invalidates the search warrant upon which the police premised their search of Scull's home. Therefore, the question in this case shifts to whether the exclusionary rule should act to exclude the evidence obtained during the improper search of Scull's home or whether the evidence is saved by the good-faith exception.[3] Application of the good-faith exception is a question of law we review *de novo. See State v. Dearborn*, 2010 WI 84, ¶ 13, 327 Wis. 2d 252, 786 N.W.2d 97.

■

¶ 14. The exclusionary rule, of course, "is a judicially created remedy that prohibits the government from introducing at the defendant's trial evidence of guilt obtained through violations of the Fourth Amendment." *United States v. Ienco*, 182 F.3d 517, 526 (7th Cir. 1999). However, "just because a Fourth Amendment violation has occurred does not mean the exclusionary rule applies." *Dearborn*, 327 Wis. 2d 252, ¶ 35. Rather, we are to apply the exclusionary rule only as a "last resort," when doing so will "deter police misconduct and

---

[3] Scull argues that the State forfeited its right to argue that the good-faith exception applies because it did not raise the issue before the circuit court. We disagree. First, we may affirm a circuit court's decision on any grounds. *See State v. Milashoski*, 159 Wis. 2d 99, 108–09, 464 N.W.2d 21 (Ct. App. 1990). Second, the good-faith exception never came up before the circuit court because the circuit court ruled on the issue prior to the United States Supreme Court's decision in *Jardines* and concluded that the dog sniff was not a search. Therefore, the circuit court did not need to explore the contours of the exclusionary rule in this case.

most appropriately when the deterrent benefits outweigh the substantial costs to the truth-seeking and law enforcement objectives of the criminal justice system." *Id.*, ¶¶ 35, 38.

¶ 15. The good-faith exception to the exclusionary rule dictates that the exclusionary rule "is not to be applied when the officers conducting an illegal search 'acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment.' " *Id.*, ¶ 33 (citing *United States v. Leon*, 468 U.S. 897, 918 (1984)). The exception encompasses situations in which "police officers act in objectively reasonable reliance upon [a search] warrant, which ha[s] been issued by a detached and neutral magistrate." *State v. Eason*, 2001 WI 98, ¶ 74, 245 Wis. 2d 206, 629 N.W.2d 625. "[T]he burden is upon the State to show that the process used in obtaining the search warrant included a significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney." *Id.*

¶ 16. The search warrant in this case was signed by a Milwaukee County Court Commissioner, and the affidavit in support of the search warrant notes that it had been reviewed by an assistant district attorney prior to its submission. Scull does not argue that the court commissioner in this case was not "detached and neutral," nor does he argue that the assistant district attorney who reviewed the affidavit was not "a knowledgeable government attorney." *See id.*

¶ 17. The search warrant was based upon the affidavit of Officer Weismueller, who averred that he had nineteen years of experience as a police officer. Officer Wiesmueller based his search warrant applica-

tion on both the tip from the confidential informant who detailed Scull's drug activities, and Voden's alert at Scull's front door.

¶ 18. Officer Wiesmueller explained to the court commissioner in his affidavit that he believed that the confidential informant was reliable because he had provided reliable information to police officers in the past, resulting in at least five arrests and two felony convictions. Furthermore, Officer Wiesmueller had been able to verify the confidential informant's tips regarding both the vehicle Scull drove and his home address.

¶ 19. Officer Wiesmueller also detailed for the court commissioner the credentials of both Detective Edersinghe and Voden, and the requirements they had met to designate them as a Police Narcotic Detection Team. Officer Wiesmueller told the court commissioner that Voden had alerted to the presence of controlled substances over 200 times, and in each alert, police had either recovered drugs or a drug nexus.

¶ 20. In short, Officer Wiesmueller's detailed affidavit is sufficient to demonstrate "that the process used in obtaining the search warrant included a significant investigation." *See Eason*, 245 Wis. 2d 206, ¶ 74.

¶ 21. Relevant caselaw at the time the search warrant was signed also convinces us that the police acted reasonably in objectively relying on the search warrant in this case. As the State points out, prior to *Jardines*, dog-sniff searches of the type presented in this case had been held lawful in many jurisdictions.[4]

_____

[4] *See United States v. Brock*, 417 F.3d 692, 696 (7th Cir. 2005) (holding that a drug sniff outside defendant's locked bedroom door was not a Fourth Amendment search "because it detected only the presence of contraband and did not provide any information about lawful activity over which [the defen-

742

Furthermore, the law was and still is that a dog sniff of the exterior of a car is not a "search" under either the Fourth Amendment or the Wisconsin Constitution. *State v. Arias*, 2008 WI 84, ¶ 14, 311 Wis. 2d 358, 752 N.W.2d 748; *see also Illinois v. Caballes*, 543 U.S. 405, 408–09 (2005) (holding that a dog sniff of a vehicle during a traffic stop, conducted absent reasonable suspicion of illegal drug activity, did not violate the Fourth Amendment because it did not implicate any legitimate privacy interest).[5]

dant] had a legitimate expectation of privacy"); *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997) (holding "that a trained dog's detection of odor in a common corridor [of a hotel] does not contravene the Fourth Amendment [and that t]he information developed from such a sniff may properly be used to support a search warrant affidavit"); *United States v. Broadway*, 580 F. Supp. 2d 1179, 1187, 1191 (D. Colo. 2008) (holding that a dog sniff outside the defendant's door in his apartment building was not a search within the meaning of the Fourth Amendment so long as the police were lawfully present in the hallway when the search occurred); *United States v. Tarazon-Silva*, 960 F. Supp. 1152, 1162–63 (W.D. Tex. 1997) (holding that a dog sniff around the perimeter of the defendant's home and alert near a dryer vent was not a Fourth Amendment search); *People v. Jones*, 755 N.W.2d 224, 229 (Mich. Ct. App. 2008) (holding that a drug sniff outside the front door of the defendant's residence was not a Fourth Amendment search because the defendant had "no reasonable expectation of privacy at the entrance to property that is open to the public, including the front porch"); *Fitzgerald v. State of Maryland*, 864 A.2d 1006, 1007 (Md. 2004) (holding that a dog "sniff of an apartment door from a common area is a permissible non-search under the Fourth Amendment"); *Porter v. State of Texas*, 93 S.W.3d 342, 346–47 (Tex. Ct. App. 2002) (holding a dog sniff outside the defendant's front door was not a Fourth Amendment search).

[5] At the time the court commissioner signed the search warrant in this case, there was no case directly addressing this issue in the state courts of Wisconsin; although, as previously mentioned, the 7th Circuit Court of Appeals had addressed the

¶ 22. In light of the reliability of the process used to obtain the search warrant for Scull's home and the state of the law at the time the search warrant was issued, we conclude that the police " 'acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment' " when they executed the search warrant and searched Scull's home. *See Dearborn*, 327 Wis. 2d 252, ¶ 33 (citation omitted). As such, application of the exclusionary rule in this case would not act to "deter police misconduct" nor would the deterrent benefits of the rule "outweigh the substantial costs to the truth-seeking and law enforcement objectives of the criminal justice system." *See id.*, ¶ 38. Therefore, we conclude that the good-faith exception to the exclusionary rule applies in this case, and we must affirm the circuit court.

*By the Court.*—Judgment affirmed.

¶ 23. KESSLER, J. (*dissenting*). I agree with the

issue in *Brock*. However, in 2011, the Honorable Lynn Adelman in the Eastern District of Wisconsin considered whether police "officers exceeded the permissible scope of [a search] warrant—which listed firearms but not controlled substances—by bringing a drug-sniffing dog into the residence." *See United States v. Jones*, 2011 WL 294842, *1 (E.D. Wis. 2011). Relying on *Illinois v. Caballes*, 543 U.S. 405 (2005), in which the United States Supreme Court upheld the dog sniff of a vehicle absent reasonable suspicion, *see id.* at 408–09, the district court held that the dog sniff was not a search because "a sniff performed by a well-trained narcotics-detection dog—which reveals only the possession of contraband—does not implicate the Fourth Amendment," *see Jones*, 2011 WL 294842 at *6. That other courts in Wisconsin found such searches to be valid under the Fourth Amendment further supports our conclusion that the police officers' reliance on the search warrant in this case was objectively reasonable.

Majority and the parties that *Jardines* invalidates the search warrant relied upon by police to search Scull's home. *See* Majority, ¶ 13. However, I disagree that the good-faith exception applies in this case. I therefore respectfully dissent.

¶ 24. The Majority contends that Officer Wiesmueller submitted a detailed affidavit to the court commissioner, in which he explained the reliability of the confidential informant and the credentials of the Police Narcotic Detection Team. *See* Majority, ¶¶ 18–20. A close examination of the search warrant, however, establishes that there was no probable cause to search Scull's house without the dog alert— something all of the parties and the Majority recognize as a clear Fourth Amendment violation under *Jardines.* Nothing in the search warrant connects drugs to Scull's home. The warrant states that the confidential informant knew Scull as a drug dealer, possibly residing at 4506 North 42nd Street. The informant connects drugs to Scull's vehicle, but Scull's vehicle was not searched. There was no surveillance of either the vehicle or Scull's home. In essence, nothing in the search warrant, aside from the evidence barred by *Jardines*, even hinted that drugs were present at Scull's home.

¶ 25. An analysis of what is missing from the search warrant (probable cause) is relevant because the good-faith exception only applies if the State can show that the process of obtaining the relied-upon warrant involved a significant investigation and review by a government attorney or police officer trained and knowledgeable about probable cause requirements. *See State v. Hess*, 2010 WI 82, ¶ 51, 327 Wis. 2d 524, 785 N.W.2d 568. I agree with the Majority that the latter requirement was met, but disagree that the State showed that the warrant resulted from a significant

investigation. Without the illegal dog-sniff, the warrant had no basis in fact or law. If the warrant was based on solid facts connecting drugs to Scull's home, not involving the dog-sniff, I would agree with the Majority that the good-faith exception applies here. However, I disagree that the good-faith exception can apply because of the clear Fourth Amendment violation. Accordingly, I respectfully dissent.