# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2956-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Gary Monroe Scull, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 352 Wis. 2d 733, 843 N.W.2d 859)
(Ct. App. 2014 – Published)
PDC No.: 2014 WI App 17

| | |
|---|---|
| OPINION FILED: | March 5, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 2, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | David Borowski |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ROGGENSACK, CROOKS, ZIEGLER, GABLEMAN, JJJJ., concur (Opinion filed). |
| | ZIEGLER, CROOKS, GABLEMAN, JJJ., concur (Opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Basil M. Loeb*, Wauwatosa, and oral argument by *Basil M. Loeb*(?).

For the plaintiff-respondent, the cause was argued by *Nancy A. Noet* (?), assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

An amicus curiae brief was filed by legal intern *Nolan A. Jensen*, *Eileen Henak* and *Henak Law Office, S.C.*, Milwaukee; and

*Melinda A. Swartz* and *Law Office of Melinda Swartz LLC*, Milwaukee, and intern Nolan A. Jenson behalf of the Wisconsin Association of Criminal Defense Lawyers.

An amicus curiae brief was filed by Kelli S. Thompson, state public defender, and Jefren E. Olsen, assistant state public defender, on behalf of the Wisconsin State Public Defender.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2011AP2956-CR
(L.C. No.  2010CF337)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**State of Wisconsin,**

        **Plaintiff-Respondent,**

    v.

**Gary Monroe Scull,**

        **Defendant-Appellant-Petitioner.**

**FILED**

**MAR 5, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1   ANN WALSH BRADLEY, J.   Petitioner, Gary Monroe Scull, seeks review of a published decision of the court of appeals that affirmed the denial of his motion to suppress evidence.[1] The court of appeals determined that the evidence obtained from a search of his home was admissible because the officers conducted the search in good faith reliance on a search warrant.

_____

[1] <u>State v. Scull</u>, 2014 WI App 17, 352 Wis. 2d 733, 843 N.W.2d 859 (affirming judgment of the circuit court of Milwaukee County, David L. Borowski, J.).

¶2    Scull contends that the warrant was invalid because it was based on information gained from a prior illegal search. More specifically, he asserts that an alert by a drug sniffing dog outside his home constituted a prior illegal search in violation of his Fourth Amendment rights because the officers needed, but did not have, a warrant to conduct the dog sniff. Accordingly, he argues, because the warrant relied on an affidavit detailing the dog's alert to the presence of drugs, the warrant was invalid and the evidence seized pursuant to that warrant must be suppressed.

¶3    Like the court of appeals, we resolve this case with a straight-forward application of our good faith jurisprudence governing police reliance on a warrant. It provides that the good faith exception to the exclusionary rule applies to evidence obtained in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate that is ultimately found to be defective. State v. Eason, 2001 WI 98, ¶3, 245 Wis. 2d 206, 629 N.W.2d 625. Reliance on a warrant is objectively reasonable when: the warrant was preceded by a substantial investigation, the affidavit supporting the warrant was reviewed by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney, and a reasonably well-trained officer would not have known that the search was illegal despite the magistrate's authorization. Id.

¶4   In this case we determine that the good faith exception to the exclusionary rule applies because the evidence Scull seeks to suppress was obtained in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate.   Accordingly, we conclude that the evidence should not be suppressed and affirm the court of appeals.

I

¶5   For purposes of our review, the facts of this case are undisputed.   A confidential informant told Officer Wiesmueller that an individual named Gary M. Scull was involved in the distribution of cocaine base within the City of Milwaukee.   The informant further identified the defendant by providing an address where he thought Scull possibly resided.   Indicating that he had personally witnessed Scull distributing the cocaine base throughout the City, the informant stated that Scull conducts narcotics trafficking from his vehicle, a 1990s Ford Bronco, license plate 792-NYG.

¶6   After receiving the information from the informant Officer Wiesmueller conducted a follow-up investigation.   He discovered that an individual named Gary M. Scull, born March 28, 1981, was on probation at the time.   The address on file for Scull matched the address provided by the informant.   Officer Wiesmueller further confirmed with the Wisconsin Department of Transportation that a vehicle with the license plate number and description matching the information provided by the informant was registered to Scull.

¶7 Officer Wiesmueller asked Detective Ederesinghe to take his dog to Scull's address. Detective Edersinghe and his dog, Voden, are a drug detection team certified in the detection of the odor of marijuana, cocaine, heroin, and methamphetamine. When Voden detects the presence of controlled substances he will "alert" by aggressively scratching at the object.

¶8 In response to Officer Weismueller's request, Detective Edersinghe took Voden to Scull's house. As he approached, a woman exited the house with two small children. He decided to come back at another time when he would not be observed. When Detective Edersinghe returned with Voden, they were on the premises for less than 20 seconds. He took the dog on the sidewalk to the side entrance of the home and then they followed the walkway to the front door. They left the premises after Voden alerted at the front door.

¶9 Based on Voden's alert and the information provided by the informant, Officer Wiesmueller sought a warrant to search Scull's home. The affidavit for the search warrant detailed Detective Edersinghe's and Voden's training and explained how Voden "alerts" to the presence of a narcotic. It then stated that "within the past seventy two (72) hours, his canine, VODEN, made an 'Alert' on the front entry door to [Scull's residence]. Detective Christopher Ederesinghe states that the 'Alert' of VODEN is a positive indication that controlled substances are contained in said apartment unit."

¶10 The affidavit further detailed how the information from the confidential informant resulted in the dog sniff. It

4

explained that the confidential informant was in a position to identify cocaine because the confidential informant had previously been involved in cocaine trafficking and that the informant was reliable because the informant had provided information in the past that had been confirmed by subsequent searches and arrests.    The affidavit stated that the confidential informant told Officer Wiesmueller that "Gary M. Scull, b/m, 04-28-1981" was "involved in the distribution of cocaine base within the City of Milwaukee," which he had personally witnessed.    The affidavit included the informant's description of Scull's vehicle and its license plate, and the address he provided for Scull.

¶11  The steps Officer Wiesmueller took to follow up on the information he received from the informant were likewise identified.    The affidavit stated that Officer Wiesmueller had ascertained that "Gary M. Scull, b/m, 04-28-1981, is currently on probation" and that the Department of Corrections gave the same address for Scull as the informant had provided. Additionally, the affidavit stated that Officer Wiesmueller had confirmed with the Wisconsin Department of Transportation that a vehicle with the license plate number and description matching the information provided by the informant was registered to Scull.

¶12 An assistant district attorney reviewed and approved the affidavit for the search warrant.  It was subsequently submitted to a circuit court commissioner.  After reviewing the affidavit, the commissioner determined that the affidavit

submitted by Officer Wiesmueller showed probable cause to believe that there were controlled substances in Scull's home. The commissioner granted the search warrant to search Scull's home for those substances.  Upon executing the warrant, officers found 53.85 grams of crack cocaine, 102.41 grams of marijuana, and drug-trafficking paraphernalia including digital scales, a razor blade, and numerous clear plastic baggies of various sizes.   Based on this evidence, the State charged Scull with possession with intent to deliver cocaine, possession with intent to deliver THC, and keeping a drug house.

¶13 Scull moved to suppress the evidence obtained from his home.  Scull asserted that the warrant was unlawfully obtained. He contended that the grounds for the warrant were insufficient because the dog sniff of his home was a warrantless search and information from an unlawful search cannot be used as a basis for a warrant justifying a subsequent search.

¶14 The circuit court denied the motion.  It recognized that there was no case directly addressing the use of a drug-sniffing dog at the entrance of a home.  However, it agreed with the State that the cases addressing dog sniffs in other circumstances established that dog sniffs were not searches and that police are lawfully on an individual's property when approaching the front door of a residence by means of a walkway. Accordingly, it determined that the dog was brought to the door of the residence "in a valid manner, not in a manner that violated the Fourth Amendment."  After his motion was denied,

6

Scull pled guilty to possession with intent to deliver more than forty grams of cocaine and to keeping a drug house.

¶15 Scull appealed.[2]  While his appeal was pending, the United States Supreme Court issued Florida v. Jardines, 569 U.S. __, 133 S. Ct. 1409 (2013), in which it determined that using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home constitutes a search under the Fourth Amendment.  Based on Jardines, the court of appeals determined that the police violated Scull's Fourth Amendment rights when they brought a drug-sniffing dog to his home without a search warrant.  State v. Scull, 2014 WI App 17, ¶1, 352 Wis. 2d 733, 843 N.W.2d 859.  Nevertheless, the court affirmed Scull's conviction because the police subsequently obtained a search warrant upon which they relied in good faith.  Id., ¶¶1, 22.

II

¶16 We are asked to determine whether the evidence obtained through the execution of a search warrant on Scull's home must be suppressed.  Generally, in reviewing motions to suppress, we apply a two-step standard of review.  Eason, 245 Wis. 2d 206, ¶9.  First, we review the circuit court's findings of fact, and uphold them unless they are clearly erroneous.  Id. Second, we independently review the application of constitutional principles to those facts.  Id.

---

[2] Although a defendant generally waives all non-jurisdictional defects when entering a guilty plea, Wis. Stat. § 971.31(10) creates an exception to this rule for appellate review of an order denying a suppression motion.

7

¶17 In this case, however, the facts are undisputed.  It is further undisputed that the dog sniff of Scull's house which served as part of the basis for the warrant violated Scull's Fourth Amendment right to be secure from unreasonable searches and seizures.  Thus, we are left to address whether the exclusionary rule applies or whether the evidence from Scull's home is admissible under the good faith exception to the rule. The application of the good faith exception to the exclusionary rule is an issue of law which we review independently of the decisions rendered by the circuit court and court of appeals. State v. Hess, 2010 WI 82, ¶19, 327 Wis. 2d 524, 785 N.W.2d 568.

III

¶18 We begin our analysis by setting forth the constitutional right at issue, the Fourth Amendment to the United States Constitution.  It provides the right of citizens to be secure against unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV.[3]

---

[3] Article I, Section 11 of the Wisconsin Constitution contains substantially the same language:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported

(continued)

8

¶19 The Supreme Court has declared that Fourth Amendment rights are "indispensable to the 'full enjoyment of personal security, personal liberty and private property.'" <u>Gouled v. United States</u>, 255 U.S. 298, 304 (1921). Courts have long extolled the importance of the home, noting that the amendment was drafted in part to codify "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." <u>Payton v. New York</u>, 445 U.S. 573, 601 (1980); <u>Holt v. State</u>, 17 Wis. 2d 468, 477, 117 N.W.2d 626 (1962) ("A home is entitled to special dignity and special sanctity.").

¶20 The Court first applied the exclusionary rule to protect against violations of Fourth Amendment rights in <u>Weeks v. United States</u>, 232 U.S. 383 (1914). Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is generally inadmissible in court proceedings. <u>Mapp v. Ohio</u>, 367 U.S. 643, 655 (1961). The court has explained that "[t]he exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth

---

by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Ordinarily, we interpret Article I, Section 11 of the Wisconsin Constitution consistent with the Fourth Amendment of the United States Constitution. However, in <u>State v. Eason</u>, 2001 WI 98, ¶63, 245 Wis. 2d 206, 629 N.W.2d 625, we required additional safeguards.

Amendment rights through the rule's general deterrent effect." Arizona v. Evans, 514 U.S. 1, 10 (1995).

¶21 Wisconsin has adopted the exclusionary rule and applied it to exclude evidence obtained in violation of the Wisconsin Constitution as well.  It was first applied in Hoyer v. State, 180 Wis. 407, 193 N.W. 89 (1923).  There, after declaring that the provisions of the Bill of Rights embodied in the constitutions are "of substance rather than mere tinsel," the Wisconsin Supreme Court determined that the evidence obtained in an unlawful search and seizure should have been suppressed.  Id. at 415.

¶22 This court has cited two rationales in support of its application of the exclusionary rule: assurance of judicial integrity and deterrence of unlawful police conduct. State v. Felix, 2012 WI 36, ¶39, 339 Wis. 2d 670, 811 N.W.2d 775; Hess, 327 Wis. 2d 524, ¶47; State v. Artic, 2010 WI 83, ¶65, 327 Wis. 2d 392, 786 N.W.2d 430;  State v. Knapp, 2005 WI 127, ¶79, 285 Wis. 2d 86, 700 N.W.2d 899; State v. Noble, 2002 WI 64, ¶31, 253 Wis. 2d 206, 646 N.W.2d 38; Eason, 245 Wis. 2d 206, ¶31 n.10; State v. Ward, 2000 WI 3, ¶47, 231 Wis. 2d 723, 604 N.W.2d 517; State v. McMorris, 213 Wis. 2d 156, 177, 570 N.W.2d 384 (1997); State v. Whitrock, 161 Wis. 2d 960, 988, 468 N.W.2d 696 (1991); Conrad v. State, 63 Wis. 2d 616, 635, 218 N.W.2d 252 (1974).  In furtherance of judicial integrity, we have explained that "[c]ourts and judges should not sanction violations of the constitution.  The integrity of the judicial process must be

inviolate and free from reliance upon transgressions against the constitution." Conrad, 63 Wis. 2d at 635.[4]

¶23  "Unlawful police conduct is deterred when evidence recovered in unreasonable searches is not admissible in courts." State v. Tompkins, 144 Wis. 2d 116, 133-34, 423 N.W.2d 823 (1988); State v. Gums, 69 Wis. 2d 513, 516-17, 230 N.W.2d 813 (1975). However, when police action was pursued in good faith "the deterrence rationale loses much of its force." Gums, 69 Wis. 2d at 517 (quoting Michigan v. Tucker, 417 U.S. 433, 447 (1974)).  Such is the case where officers act in reliance on clear and well-settled law that is subsequently changed, State v. Dearborn, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97, and where officers act in objectively reasonable reliance on a subsequently invalidated search warrant, Eason, 245 Wis. 2d 206.

¶24  In this case, the parties frame the question regarding the application of the good faith exception as whether the officers could have acted in reliance on clear and well-settled law that was subsequently reversed.  Both parties agree that Jardines, 133 S. Ct. 1409, rendered the dog sniff of Scull's home illegal at the time it was conducted.  They dispute whether

---

[4]  We are not asserting that judicial integrity is a stand-alone basis for the exclusion of evidence.  The protection of judicial integrity goes hand-in-hand with deterrence of police misconduct.  As this court has explained, "[t]he protection of rights and the preservation of judicial integrity depend in reality on the deterrent effect of the exclusionary rule." State v. Tompkins, 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988).

the officers could have acted in reliance on the law at the time of the search such that the good faith exception should apply.

¶25  We need not address this argument because a straightforward application of our good faith jurisprudence governing police reliance on a warrant resolves our inquiry.  Here, the officers ultimately obtained a warrant to search Scull's home and that warrant was issued by a detached and neutral commissioner.  The commissioner's decision to grant the warrant was a reasonable application of the unsettled state of the law at the time the warrant issued.

¶26  Two Wisconsin cases had addressed the validity of a dog sniff.  The first, State v. Miller, 2002 WI App 150, 256 Wis. 2d 80, 647 N.W.2d 348, addressed a warrantless dog sniff of a vehicle.  In addressing the defendant's Fourth Amendment rights, the court observed that a dog sniff is much less intrusive than a typical search.  Id., ¶6.  Further, dog sniffs reveal only illegal conduct to which there is no legitimate privacy interest.  Id., ¶9.  Accordingly, the court concluded that the dog sniff of the vehicle did not constitute a search and thus there was no Fourth Amendment violation.  Id., ¶10.

¶27  In the second case, State v. Arias, 2008 WI 84, 311 Wis. 2d 358, 752 N.W.2d 748, this court likewise considered a dog sniff of a vehicle in a public place.  We agreed with Miller's statements that there is no constitutionally protected interest in possessing contraband, and that a dog sniff is much less intrusive than activities that have been held to be searches.  Id., ¶¶22-24.  Accordingly, we determined that a dog

12

sniff of a vehicle located in a public place was not a search for purposes of the Wisconsin Constitution.  Id., ¶24.

¶28 Both Wisconsin cases are consistent with the United States Supreme Court precedent issued prior to Jardines.  In Illinois v. Caballes, 543 U.S. 405 (2005), the Court assessed whether a dog sniff of a vehicle stopped for speeding violated the Fourth Amendment.  The defendant had argued that the sniff was impermissible because the officers lacked reasonable suspicion to justify it.  Id. at 407.  The court was not persuaded.  Like Miller and Arias, it focused on the fact that there is no protected privacy interest in having an illegal substance and the non-intrusive nature of a dog sniff.  The court observed that "[o]fficial conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment."  Id. at 408 (quoting United States v. Jacobsen, 466 U.S. 109, 123 (1984)).  Therefore, it concluded that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."  Id. at 409.

¶29  In United States v. Place, 462 U.S. 696, 707 (1983), the Court considered a dog sniff in the context of an individual's luggage.  After an airline passenger's conduct aroused suspicion, the officers seized his luggage and subjected it to a "sniff test" by a trained narcotics detection dog.  Id. at 699.  The Court noted that although a person possesses a privacy interest in the contents of their personal luggage, a

13

dog sniff does not require opening the luggage. Id. at 707. Thus, the Court concluded that the dog sniff of the luggage did not constitute a search within the meaning of the Fourth Amendment. Id.

¶30 In sum, at the time the commissioner issued the warrant in this case, there was Wisconsin and United States Supreme Court precedent stating there is no search when a dog sniffs a vehicle. There was also precedent stating that there is no search when a dog sniffs luggage at an airport. However, it was unsettled whether the same analysis would apply to a dog sniff of a home.[5] Given the precedent, the commissioner's decision to grant the warrant appears to be a reasonable application of the unsettled law at the time the warrant issued. Accordingly, we turn to our case law addressing the application of the good faith exception to evidence obtained in reliance on a warrant.

¶31 The seminal Wisconsin case on the application of the good faith exception to the exclusionary rule in circumstances involving a search warrant is Eason, 245 Wis. 2d 206. In that case a court commissioner issued a no-knock search warrant based on an affidavit submitted by police. Id., ¶4. When the

---

[5] Notably, at the time the warrant was issued, had the commissioner reviewed other states' jurisprudence on this question, he would have discovered the appellate decision in State v. Jardines, 9 So. 3d 1 (Fla. Dist. Ct. App. 2008), which held that a dog's sniff of a home was not a Fourth Amendment search.

14

officers executed the warrant they discovered narcotics at the defendant's home. Id., ¶5. At trial, however, the circuit court granted the defendant's motion to suppress the narcotics because it determined that the affidavit in support of the warrant failed to allege the requisite reasonable suspicion to justify the issuance of the no-knock search warrant. Id., ¶7.

¶32 On appeal, this court acknowledged that in United States v. Leon, 468 U.S. 897 (1984), the United States Supreme Court formulated a good faith exception to the exclusionary rule where a police officer acts in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. Id., ¶27. In that situation, there would be little deterrent effect from suppression because the "officer is acting as a reasonable officer would and should act in similar circumstances." Id., ¶32 (quoting Leon, 468 U.S. at 920).

¶33 Leon cautioned that the existence of a warrant does not necessarily mean that the good faith exception to the exclusionary rule will apply. Leon, 468 U.S. at 922. It will not apply where "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23. An officer "cannot reasonably rely upon a warrant that was based upon a deliberately or recklessly false affidavit, or, a bare bones affidavit that she or he reasonably knows could not support probable cause or reasonable suspicion." Eason, 245 Wis. 2d 206, ¶36 (citing Leon, 468 U.S. at 923). Further, "[t]he officer cannot reasonably rely upon a warrant 'so facially deficient' that she

15

or he could not 'reasonably presume it to be valid'" or "upon a warrant issued by a magistrate that 'wholly abandoned his [or her] judicial role.'" Id. (quoting Leon, 468 U.S. at 923).

¶34 The Eason court observed that Leon is consistent with this court's prior statements that application of the exclusionary rule requires a weighing of the pertinent interests. Eason, 245 Wis. 2d 206, ¶43. It concluded that the good faith exception should apply to the situation where an officer acts in objectively reasonable reliance on a warrant by a detached and neutral magistrate because in that scenario, the exclusionary rule has no deterrent effect. Id., ¶52.

¶35 However, rather than adopting Leon outright, this court added to the test. It determined that Article I, Section 11 of the Wisconsin Constitution required additional protection. Id., ¶63. Thus, in order for the good faith exception to apply to scenarios involving a warrant, the State must "show that the process used in obtaining the search warrant included a significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney." Id., ¶74.

¶36 In applying this test to the facts of the case, the Eason court determined that the officers had conducted a significant investigation before seeking the warrant. Id., ¶70. The court explained that the officers had worked with a confidential informant, researched the suspects in police records, and researched utility records for the premises. Id.

16

The Eason court also determined that the warrant application had been reviewed by a government attorney. Id., ¶71. To reach this conclusion, it relied on the fact that "[t]he warrant and affidavit reflect advanced legal training, beyond that given to a well-trained police officer." Id.

¶37 The application section of Eason's analysis also reflects that the court considered whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization, which would render the officers' reliance on the warrant unreasonable. Id., ¶66. The court observed that "[t]here have been no allegations that the warrant was so facially deficient that a reasonable, well-trained officer would not have relied upon it." Id. Further, there were "no contentions that there [were] technical or other glaring deficiencies with the warrant" and "[t]he affidavit [was] not sketchy or bare-boned." Id. Accordingly, the court determined that the officers' reliance on the warrant was objectively reasonable and the evidence obtained from execution of the warrant should not have been suppressed.

IV

¶38 Turning to the facts of this case, we follow the test laid out in Eason. First, we determine whether officers conducted a significant investigation prior to obtaining the warrant. Second, we assess whether the affidavit supporting the warrant was reviewed by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney.

17

Lastly, we consider whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization, rendering the officers' reliance on the warrant unreasonable.

¶39 In terms of the first factor, we determine that Officer Wiesmueller conducted a significant investigation before obtaining the warrant. It appears the investigation into Scull began when a confidential informant told Officer Wiesmueller that Scull was selling cocaine base. Officer Wiesmueller determined that the informant would be in a position to know that the substance Scull distributed was cocaine because the informant had been involved in cocaine trafficking in the past. Further, he deemed the informant reliable because the informant had provided information in the past that had been confirmed by subsequent searches and arrests.

¶40 Upon investigating further, Officer Wiesmueller discovered that there was an individual named Scull, matching the informant's description, who was on probation at the time for robbery and recklessly endangering safety in Milwaukee County. From the Department of Corrections records, Officer Wiesmueller confirmed that the home address the informant had given him was Scull's address. Officer Wiesmueller also obtained records from the Wisconsin Department of Transportation from which he was able to confirm that a vehicle matching the description and license plate number provided by the informant was registered to Scull.

18

¶41 After verifying the information from the informant, Officer Wiesmueller had Detective Edersinghe take his drug-sniffing dog to Scull's address.  The dog alerted to the presence of drugs at Scull's front door.  With this information, combined with the information from the informant, Officer Wiesmueller sought a warrant.  The multiple steps taken by Officer Wiesmueller to investigate the allegations of drug trafficking were reasonable at the time and sufficient to satisfy the investigation requirement for purposes of the good faith exception under Eason.  Therefore, we conclude that the State met its burden of showing that a significant investigation was conducted prior to the warrant.

¶42 The State also met its burden with regard to the second factor, review of the affidavit by a knowledgeable government attorney.  In this case, we need look only at the face of the affidavit for the search warrant to make this determination.  The affidavit states that it was "reviewed and approved by ADA Christopher Ladwig on 07-02-2010."  Thus, it is evident that the affidavit was reviewed by a knowledgeable government attorney.  See State v. Marquardt, 2005 WI 157, ¶46, 286 Wis. 2d 204, 705 N.W.2d 878 (testimony that an experienced district attorney had met with the officers and drafted the warrant established that it had been reviewed by a knowledgeable government attorney); Eason, 245 Wis. 2d 206, ¶71 (determining that warrant had been reviewed by a knowledgeable government attorney based on the language in the warrant which "reflect[ed] advanced legal training.").

19

¶43 Lastly, we turn to consider whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization, rendering the officers' reliance on the search warrant unreasonable. As in Eason, it is not contended and we see nothing to suggest that the warrant in this case was so facially deficient that a reasonable, well-trained officer would not have relied upon it, that there were technical or other glaring deficiencies with the warrant, or that the affidavit was sketchy or bare-boned. Accordingly, we conclude that at the time the officers executed the warrant on Scull's home, a reasonable officer would not have known that a search was illegal despite the warrant.

¶44 From the record presented in this case it appears that the officers did everything they were required to do. With the assistance of a knowledgeable government attorney they obtained a warrant from a detached and neutral magistrate, which they relied on to search Scull's home. Suppressing evidence obtained in objectively reasonable reliance on that warrant would have no deterrent effect. In such circumstances it is inappropriate to apply the exclusionary rule. Therefore we determine that the good faith exception to the rule applies.

V

¶45 In sum, the good faith exception to the exclusionary rule applies to evidence obtained in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate that is ultimately found to be defective. Reliance on a warrant is objectively reasonable when: the warrant was

20

preceded by a substantial investigation, the affidavit supporting the warrant was reviewed by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney, and a reasonably well-trained officer would not have known that the search was illegal despite the magistrate's authorization.

¶46 In this case we determine that the good faith exception to the exclusionary rule applies because the evidence Scull seeks to suppress was obtained in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate. Accordingly, we conclude that the evidence should not be suppressed and we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶47 PATIENCE DRAKE ROGGENSACK, J. *(concurring).* I join the majority opinion's conclusions that the officers conducted their search in reasonable reliance on a search warrant that they believed was valid and that the good faith exception to the exclusionary rule precludes suppression.[1] I write in concurrence to clarify that the "assurance of judicial integrity," standing alone, is not a sufficient basis upon which to employ the exclusionary rule to preclude the prosecution's use of evidence seized when there is no underlying finding of police misconduct. Accordingly, the majority opinion is not to be read as setting a new standard that permits the exclusion of evidence without police misconduct.

¶48 The exclusionary rule is a judicially created remedy that may be applied to certain violations, including those of the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. Davis v. United States, __ U.S. __, 131 S. Ct. 2419, 2423 (2011); State v. Ward, 2000 WI 3, ¶¶46, 58, 231 Wis. 2d 723, 604 N.W.2d 517. The exclusionary rule was developed as a safeguard of Fourth Amendment rights by requiring police to comply with the Fourth Amendment's reasonableness requirements as a precondition to the prosecution's use of evidence that police seized. Weeks v. United States, 232 U.S. 383, 398 (1914); Hoyer v. State, 180 Wis. 407, 417, 193 N.W. 89 (1923).

---

[1] Majority op., ¶1.

¶49 As Fourth Amendment and Article I, Section 11 jurisprudence developed, the exclusionary rule has become subject to exceptions. Both the United States Supreme Court's and our own decisions have established good faith as an exception to the exclusionary rule that permits prosecution's use of evidence even though police have transgressed the Fourth Amendment and Article I, Section 11. United States v. Leon, 468 U.S. 897, 916, 920 (1984); State v. Eason, 2001 WI 98, ¶2, 245 Wis. 2d 206, 629 N.W.2d 625; Ward, 231 Wis. 2d 723, ¶3. These decisions are grounded in judicial assessment of the reasonableness of police actions under the totality of the circumstances. Davis, 131 S. Ct. at 2427-28; Eason, 245 Wis. 2d 206, ¶3.

¶50 As the parameters of the good faith exception to the exclusionary rule have developed both in the Supreme Court's and in our jurisprudence, so too have the judicial expressions of the policies that underlie the exclusionary rule. For example, in its recent decision in Davis, the Supreme Court expended considerable effort explaining the policies that must be considered with regard to the exclusionary rule and what facts are necessary before exclusion of evidence is even an option for courts to consider.

¶51 Davis involved the search of the passenger compartment of Stella Owens' vehicle, in which Willie Davis was a passenger, after both Owens and Davis were placed under arrest and secured. Davis, 131 S. Ct. at 2425-26. A gun was found in Davis' jacket; Davis was a convicted felon. Id. The search occurred before

2

the Court's decision in Arizona v. Gant, 556 U.S. 332 (2009), which Alabama agreed set out new concerns relative to the search of Davis' jacket under the Fourth Amendment if Gant were applied to that search. Davis, 131 S. Ct. at 2431. However, while Gant provided a "newly announced rule of substantive Fourth Amendment law as a basis for seeking relief," Gant did not determine the remedy, i.e., whether suppression applies. Id.

¶52 The ultimate question presented in Davis was whether the good faith exception to the exclusionary rule permitted the prosecution to present evidence obtained in a search that complied with appellate precedent that pre-dated Gant. In deciding this question, the Court examined whether police had proceeded in objectively reasonable reliance on then-controlling precedent in conducting the search. Davis, 131 S. Ct. at 2423-24. After concluding that police had done so, the Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." Id.

¶53 Although the Court's conclusion settled an important area of Fourth Amendment law, what is equally interesting about Davis is the Court's detailed descriptions of the showing that is required before the exclusionary rule can be considered. For example, the Court reaffirmed its holding in Herring v. United States, 555 U.S. 135 (2009), that the exclusionary rule's sole purpose is to deter future Fourth Amendment violations by

3

police.  Davis, 131 S. Ct. at 2426 (citing Herring, 555 U.S. at 141).[2]

¶54  The Court explained, "[r]eal deterrent value is a necessary condition for exclusion, but it is not a sufficient one. . . .  The analysis must also account for the substantial social costs generated by the rule. . . .  For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs."  Id. at 2427 (cited and quoted cases omitted).  When the error that leads to a Fourth Amendment violation is not that of police but that of a magistrate or judge who issues the warrant, the exclusionary rule does not apply.  "[P]unish[ing] the errors of judges is not the office of the exclusionary rule."  Id. at 2428 (cited and quoted cases omitted).  And finally, the Court explained, "in 27 years of practice under Leon's good-faith exception, we have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct."  Id. at 2429 (quoting Herring, 555 U.S. at 144).

¶55  Our decision in Eason discussed the development of the exclusionary rule.  We began by reviewing Hoyer, which addressed the Fourth Amendment's requirements, and we also considered the exclusionary rule as developed within the parameters of Article I, Section 11 of the Wisconsin Constitution.  Eason, 245 Wis. 2d

---

[2] See also State v. Hess, 2010 WI 82, ¶¶79-84, 327 Wis. 2d 524, 785 N.W.2d 568 (Gableman, J., dissenting), for a thorough discussion of Herring v. United States, 555 U.S. 135 (2009), and Herring's explanation of the considerations that courts must address when asked to apply the exclusionary rule.

206, ¶¶41, 47 (citing <u>Hoyer v. State</u>, 180 Wis. 407, 193 N.W. 89 (1923). We noted that at least since confirmed in <u>State v. Tompkins</u>, 144 Wis. 2d 116, 423 N.W.2d 823 (1988), "the exclusionary rule has been a remedy, not a right" under Article I, Section 11 of the Wisconsin Constitution, as well as the Fourth Amendment. <u>Eason</u>, 245 Wis. 2d 206, ¶48. We also cited <u>Ward</u> as explaining that without police misconduct, evidence was admissible because "exclusion . . . would serve no remedial objective." <u>Id.</u>, ¶49 (quoting <u>Ward</u>, 231 Wis. 2d 723, ¶63). Therefore, just as with the Fourth Amendment, Article I, Section 11 of the Wisconsin Constitution requires police misconduct as a necessary predicate to consideration of whether the exclusionary rule should be applied. <u>Id.</u>

¶56 So how does the above discussion fit within my concern set out in the first paragraph of this concurrence? It provides the necessary foundation to understand that the lead opinion in <u>Hess</u> cannot be combined with certain narrations of the majority opinion herein to conclude that the protection of judicial integrity, standing alone without underlying police misconduct, is sufficient to permit courts to suppress relevant evidence.[3]

---

[3] Majority op., ¶22, citing the lead opinion in <u>Hess</u>, 327 Wis. 2d 524, ¶47, in which there was no underlying police misconduct.

Let me explain further, beginning with the problem set up by the lead opinion in Hess.[4]

¶57 First, while protection of judicial integrity was mentioned in Supreme Court decisions and in our decisions that preceded Leon's 1984 decision on good faith, protection of judicial integrity is no longer part of the Supreme Court's analysis. In that regard, the Supreme Court has unequivocally held that before the exclusionary rule may be employed as a remedy for a Fourth Amendment violation two conditions are required: (1) police misconduct and (2) a reviewing court's conclusion that "the deterrence benefits of suppression [] outweigh its heavy costs." Davis, 131 S. Ct. at 2427. Protection of judicial integrity is not part of the Supreme Court's Fourth Amendment analysis when the remedy sought is suppression of evidence. We came to the same conclusion in Eason as we addressed Article I, Section 11 of the Wisconsin Constitution. Eason, 245 Wis. 2d 206, ¶48. Accordingly, when an opinion relies on case law that has been refined through years of consideration by many courts without discussing current

---

[4] In Hess, the court sat six because Justice Crooks did not participate. Hess, 327 Wis. 2d 524, ¶70. The lead opinion, authored by Justice Prosser, was joined by Chief Justice Abrahamson and Justice Bradley. Justice Ziegler joined the result reached by the lead opinion, but on a very limited basis. Id., ¶71 (Ziegler, J., concurring). Justice Gableman wrote a thoughtful dissent that took issue with the lead opinion's conclusion that application of the exclusionary rule could stand on a foundation of judicial integrity when there had been no police misconduct. Id., ¶¶75-97 (Gableman, J., dissenting).

6

jurisprudence on the issues presented, it does not accurately articulate the state of the law and may confuse the reader.

¶58 Second, the protection of judicial integrity was spoken of only in regard to its connection to police misconduct. See Conrad v. State, 63 Wis. 2d 616, 635, 218 N.W.2d 252 (1974) (explaining that judicial integrity could be compromised if unlawful police conduct was sanctioned by the use of evidence obtained in violation of the Fourth Amendment); Elkins v. United States, 364 U.S. 206, 222-23 (1960) (explaining that "[i]f the Government becomes a law-breaker, it breeds contempt for law").

¶59 Third, the lead opinion in Hess is the only Wisconsin Supreme Court decision, or United States Supreme Court decision, that I could locate that employs protection of judicial integrity as a stand-alone basis for employing the exclusionary rule. Justice Gableman tried to point out this concern, but the lead opinion in Hess did not heed his thoughtful dissent.

¶60 Fourth, because the majority opinion herein cites the lead opinion in Hess in a manner that could permit the reader to erroneously conclude that police misconduct is not a necessary predicate to the application of the exclusionary rule under both United States Supreme Court precedent and our own precedent, I have chosen to bring this issue forward. It is my hope that my colleagues both on the bench and at the bar will take heed of this trap for the unwary and recognize that the majority opinion is not setting a new standard that permits the exclusion of evidence without police misconduct. Accordingly, I respectfully concur.

7

¶61  I am authorized to state that Justices N. PATRICK CROOKS, ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this opinion.

¶62 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join Justice Roggensack's concurrence because I believe that the "assurance of judicial integrity" is not a stand-alone basis for suppressing evidence under the exclusionary rule. Although the case at issue centers on the Fourth Amendment, I write to clarify that the exclusionary rule can apply to violations of constitutional provisions other than the Fourth Amendment.[1] The exclusionary rule requires suppression of evidence that was obtained in violation of the Constitution, unless suppression would not deter police misconduct or the error in admitting the evidence was harmless beyond a reasonable doubt. United States v. Leon, 468 U.S. 897, 906, 916 (1984); Arizona v. Fulminante, 499 U.S. 279, 309-12 (1991); Chapman v. California, 386 U.S. 18, 21-22 (1967); State v. Armstrong, 223 Wis. 2d 331, 368, 588 N.W.2d 606 (1999).

¶63 Because this is a Fourth Amendment case, the majority opinion's discussion of the exclusionary rule focuses on that constitutional provision. Specifically, the majority opinion states that, "[t]he [United States Supreme Court] first applied the exclusionary rule to protect against violations of Fourth Amendment rights in Weeks v. United States, 232 U.S. 383 (1914). Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is generally inadmissible in court

---

[1] Because this case involves a discussion of the exclusionary rule, I do not address circumstances unrelated to constitutional violations, which may otherwise warrant the exclusion of evidence.

1

proceedings." Majority op., ¶20 (citation omitted). Similarly, this court has previously discussed the origins of the exclusionary rule as it relates to the Fourth Amendment because the focus of the case was the Fourth Amendment. See State v. Hess, 2010 WI 82, ¶¶38-52, 327 Wis. 2d 524, 785 N.W.2d 568 (explaining the history of the Fourth Amendment exclusionary rule in federal courts and Wisconsin). I write to clarify that the history of the exclusionary rule is not limited to Fourth Amendment violations——it applies to other constitutional violations as well.

¶64 The Supreme Court created the exclusionary rule to deter constitutional violations, but did not limit the exclusionary rule to the Fourth Amendment right against unreasonable searches and seizures. The exclusionary rule, if warranted, results in the suppression of evidence so that it may not be introduced to prove a defendant's guilt in the prosecution's case-in-chief. See Leon, 468 U.S. at 906, 916. The exclusionary rule, for example, may apply to deter violations of the Fourth Amendment,[2] Fifth Amendment,[3] or Sixth Amendment.[4]

---

[2] Weeks v. United States, 232 U.S. 383, 398 (1914), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643 (1961); State v. Tye, 2001 WI 124, ¶24, 248 Wis. 2d 530, 636 N.W.2d 473.

[3] Blackburn v. Alabama, 361 U.S. 199, 205 (1960); Bram v. United States, 168 U.S. 532, 542, 548 (1897); Rudolph v. State, 78 Wis. 2d 435, 441-42, 254 N.W.2d 471 (1977).

[4] United States v. Wade, 388 U.S. 218, 237-39 (1967); Massiah v. United States, 377 U.S. 201, 203-04, 206-07 (1964); State v. McMorris, 213 Wis. 2d 156, 178, 570 N.W.2d 384 (1997).

2

¶65 The origins of the exclusionary rule further demonstrate that it was designed to apply to evidence obtained in violation of constitutional provisions beyond the Fourth Amendment. The United States Supreme Court applied the exclusionary rule for the first time in Boyd v. United States, 116 U.S. 616 (1886). See Christopher Slobogin, The Exclusionary Rule: Is It on Its Way Out? Should It Be?, 10 Ohio St. J. Crim. L. 341, 343-44 (2013). In Boyd the Supreme Court held that the evidence at issue was inadmissible because it was obtained in violation of the Fourth and Fifth Amendments. Boyd, 116 U.S. at 621-22, 633-35, 638. Ten years later, the Supreme Court held that the exclusionary rule applied, in federal criminal cases, to confessions obtained in violation of the Fifth Amendment. Wilson v. United States, 162 U.S. 613, 623 (1896); see also Bram v. United States, 168 U.S. 532, 542, 548 (1897). Nearly 20 years later, in 1914, the Supreme Court held for the first time that the exclusionary rule applied, in federal criminal cases, to evidence obtained in violation of the Fourth Amendment. Weeks v. United States, 232 U.S. 383, 398 (1914), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643 (1961); see also Mapp, 367 U.S. at 648 (explaining that Weeks was the first case in which the Supreme Court "held that 'in a federal prosecution the Fourth Amendment barred the use of evidence secured through an illegal search and seizure'" (quoted source omitted)). Thus, the Fourth Amendment was not the only driving force behind the Supreme Court's adoption of the exclusionary rule, which occurred decades before Weeks.

3

¶66 Furthermore, the exclusionary rule does not always require suppression of evidence, even if it was obtained through unconstitutional means. In fact, the exclusionary rule does not apply when suppression would not deter police misconduct. Davis v. United States, 564 U.S. ___, 131 S. Ct. 2419, 2426-28 (2011); State v. Dearborn, 2010 WI 84, ¶35, 327 Wis. 2d 252, 786 N.W.2d 97. For example, evidence may not be suppressed under the good faith exception[5] because suppression would not serve the exclusionary rule's purpose of deterring police misconduct. Evidence obtained after a constitutional violation may otherwise be admissible if the discovery of the evidence was sufficiently attenuated from the police misconduct,[6] the evidence was discovered through a source independent from the police misconduct,[7] or the evidence would have been inevitably discovered through lawful means.[8] In addition, evidence that is suppressed because of a constitutional violation may nonetheless

---

[5] United States v. Leon, 468 U.S. 897, 922-25 (1984); State v. Dearborn, 2010 WI 84, ¶¶35-49, 327 Wis. 2d 252, 786 N.W.2d 97; State v. Eason, 2001 WI 98, ¶3, 245 Wis. 2d 206, 629 N.W.2d 625.

[6] Brown v. Illinois, 422 U.S. 590, 603-04 (1975); Wong Sun v. United States, 371 U.S. 471, 488 (1963); State v. Phillips, 218 Wis. 2d 180, 204-06, 577 N.W.2d 794 (1998).

[7] Murray v. United States, 487 U.S. 533, 537 (1988); Nix v. Williams, 467 U.S. 431, 443 (1984); State v. Carroll, 2010 WI 8, ¶¶43-55, 322 Wis. 2d 299, 778 N.W.2d 1.

[8] Murray, 487 U.S. at 539; Nix, 467 U.S. at 446-50; State v. Weber, 163 Wis. 2d 116, 140-44, 471 N.W.2d 187 (1991); State v. Schwegler, 170 Wis. 2d 487, 499-500, 490 N.W.2d 292 (Ct. App. 1992).

be admitted for certain purposes. For example, suppressed evidence may be used collaterally for impeachment purposes, outside of the prosecution's case-in-chief.[9]

¶67 Some potential confusion surrounding the exclusionary rule could stem from the fact that evidence may be properly excluded for a variety of reasons. But the mere fact that evidence is being excluded does not mean that it is excluded under the exclusionary rule. "There are judicially created exclusionary rules and legislatively created exclusionary rules. There are constitutional exclusionary rules and statutory exclusionary rules." Sun Kin Chan v. State, 552 A.2d 1351, 1355 (Md. Ct. Spec. App. 1989). A careful reader will keep in mind that courts may inaccurately refer to "the exclusionary rule" when a constitutional violation is not the basis for exclusion. Cf. Oregon v. Elstad, 470 U.S. 298, 306-08 (1985) (explaining the differences between the "Fourth Amendment exclusionary rule"

---

[9] Kansas v. Ventris, 556 U.S. 586, 593-94 (2009) (holding that defendant's statement obtained in violation of Sixth Amendment right to counsel was inadmissible to prove guilt but admissible to impeach defendant's inconsistent testimony); State v. Pickett, 150 Wis. 2d 720, 727-30, 442 N.W.2d 509 (Ct. App. 1989) (same); United States v. Havens, 446 U.S. 620, 627-28 (1980) (holding that evidence obtained in violation of Fourth Amendment was inadmissible to prove guilt but admissible to impeach defendant's inconsistent testimony); State v. Thompson, 142 Wis. 2d 821, 833 & n.8, 419 N.W.2d 564 (Ct. App. 1987) (same); Oregon v. Hass, 420 U.S. 714, 722-24 (1975) (holding that defendant's statement made without warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), was inadmissible to prove guilt but admissible to impeach defendant's inconsistent testimony); State v. Mendoza, 96 Wis. 2d 106, 118-19, 291 N.W.2d 478 (1980) (same).

5

and the "Miranda[10] exclusionary rule").  Because the Fourth Amendment is at issue in the present case, the majority opinion's discussion of the exclusionary rule focuses on the Fourth Amendment.

¶68 With the foregoing clarification, I join Justice Roggensack's concurrence, and I concur.

¶69 I am authorized to state that Justices N. PATRICK CROOKS and MICHAEL J. GABLEMAN join this concurrence.

---

[10] Miranda v. Arizona, 384 U.S. 436 (1966).