ANNETTE KINGSLAND ZIEGLER, J.
*789 ¶ 1 This is a review of the Bayfield County circuit court's order granting Christopher John Kerr's ("Kerr") motion to suppress evidence discovered during a search incident to arrest on the basis that " 'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio."[1] We reverse.
¶ 2 On September 27, 2015, two officers were dispatched to follow up on a 9-1-1 hang-up call from Kerr's residence. En route, they were advised by dispatch that there was an outstanding arrest warrant for Kerr in Ashland County. When the officers arrived at Kerr's residence, they discovered that the 9-1-1 call was in error, but arrested Kerr pursuant to the arrest warrant. In conducting a search incident to arrest, the officers discovered methamphetamine in Kerr's pants pocket. The State subsequently charged Kerr with one count of possession of methamphetamine in violation of Wis. Stat. § 961.41(3g)(g) (2015-16).[2]
¶ 3 Kerr filed a pre-trial motion to suppress the evidence discovered during the search incident to arrest. He argued that, while a warrant had been issued, and law enforcement did not engage in any misconduct in executing the warrant, his constitutional rights were nonetheless violated because he was jailed without the issuing court first inquiring as to his ability to pay, without being given notice that his ability to pay is at issue, and without a meaningful opportunity to be heard. He argued that the warrant would not have been issued, and he would not have been arrested or searched incident to arrest, if he had been afforded due process in the forfeiture action.[3]
¶ 4 After extensive briefing and three hearings, the reviewing court granted Kerr's motion to suppress. It concluded that, although "[t]here is no question that the [issuing court], as a court of general jurisdiction, has the constitutional and statutory authority to hear and process municipal citations," the warrant was "not in compliance with the statutory requirements and clearly violated defendant's statutory due process rights." The reviewing court then concluded that suppression under the exclusionary rule was proper based on the "Wisconsin rule that 'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio." In so concluding, the reviewing court referenced the deterrent purpose of the exclusionary rule and how "[h]ere the conduct is not isolated and may be the rule, not the exception.
*790 Dete[r]rence certainly is a greater consideration under these facts."
¶ 5 The State sought interlocutory review and filed a petition to bypass the court of appeals, seeking immediate review from this court. We granted the State's petition to bypass.
¶ 6 Our overarching inquiry in this case is whether the reviewing court erred in granting Kerr's motion to suppress. Fundamental to our analysis is whether evidence discovered during a search incident to arrest is properly suppressed under the exclusionary rule when there is no police misconduct. We conclude that suppression is not appropriate because the sole purpose of the exclusionary rule is to deter police misconduct, and there is no police misconduct here. Neither judicial integrity nor judicial error is a standalone basis for suppression under the exclusionary rule.[4] We therefore conclude that the reviewing court's grant of Kerr's motion to suppress on the basis of judicial integrity is error.
¶ 7 Accordingly, we reverse the Bayfield County circuit court.
I. FACTUAL AND PROCEDURAL BACKGROUND
A. The Warrant
¶ 8 A certified copy of the record for City of Ashland v. Kerr, No. 2015FO219, is included in the record before us, but it is particularly lean. This record reflects that, on June 16, 2015, Kerr was mailed a citation for disorderly conduct, in violation of City of Ashland ordinance 201.03.[5] This citation notified Kerr to appear, if he so chose, at 10:00 a.m. on July 21, 2015.[6] This record also reflects that, on July 21, 2015, when Kerr failed to appear, the issuing court entered a default judgment in the amount of $263.50 with 60 days to pay, and that on July 31, 2015, the clerk sent notice of the default judgment to Kerr (although neither the judgment nor the notice is in the record).[7] On September 22, 2015, 60 *791 days after default judgment was entered, the court issued a commitment order/arrest warrant[8] for Kerr to "detain [him] in custody for 90 days or until $298.50 [9 ] is paid, or until the person is discharged by due course of law." This warrant was issued on the basis that "[t]he balance due has not been paid within the period ordered by the court."
B. The Arrest
¶ 9 On September 27, 2015, around midnight, 9-1-1 received a call from a phone number later-identified as Kerr's. When the 9-1-1 operator picked up the call, there was a female yelling, but the operator did not have the opportunity to discover the nature of her distress before the line went dead. When the operator called back, a male answered the phone and the operator heard him say "shut the fuck up." When the operator asked whom the male had been talking to, he responded that he was talking to his cat. He denied that there was a female there and said that there was no problem and that the call had been made by accident.
¶ 10 The operator ran the number and discovered it was registered to Kerr and that Kerr had an active arrest warrant in Ashland County. The operator then dispatched Officer Matt Ladwig of the City of Bayfield Police Department and Deputy Matt Leino of the Bayfield County Sheriff's Department to Kerr's residence to follow up on the 9-1-1 call, advising them both that Kerr had a warrant for his arrest in Ashland County. When they arrived, they spoke with Kerr and his girlfriend, R.E., and determined that, although the two had had an argument, the 9-1-1 call was an accidental dial. Officer Ladwig then informed Kerr that there was a warrant for his arrest in Ashland County for an unpaid judgment in the amount of $298.50 and placed Kerr under arrest. He conducted a search incident to arrest and discovered a plastic bag containing a white-colored rock in Kerr's pants pocket, which, after testing, was revealed to be methamphetamine.
C. The Motion To Suppress
¶ 11 On October 7, 2015, the State filed its criminal complaint, charging one count of possession of methamphetamine in violation of Wis. Stat. § 961.41(3g)(g).[10]
¶ 12 On June 8, 2016, prior to trial, Kerr filed a motion to suppress the methamphetamine discovered during the search incident to his arrest.[11] The crux of Kerr's argument is that issuance of the civil municipal arrest warrant violated his due process rights because, contrary to the statutory *792 requirements, "[t]here was no hearing that was noticed to provide [him] an opportunity to be heard on the issue of his ability to pay prior to the issuance of a warrant." Kerr argued that the warrant for this civil municipal ticket never should have been issued, Kerr never should have been arrested, and the methamphetamine never should have been discovered. Therefore, says Kerr, the evidence should be suppressed because it was discovered as a result of an unlawful arrest in violation of his constitutional and statutory rights.
¶ 13 On July 12, 2016, the reviewing circuit court held its first hearing on the motion, at which Officer Ladwig, Deputy Leino, and Kerr all testified. Officer Ladwig and Deputy Leino testified to the facts described above regarding the arrest. They also both testified that they had not attempted to look up the arrest warrant. Kerr testified that he had been unaware of any warrant from Ashland County, and that he had had no hearing about owing any money prior to his arrest on September 27, 2015.
¶ 14 On September 6, 2016, after further briefing, the reviewing court held its second hearing on the motion, hearing arguments from the parties. Kerr argued that the arrest warrant was facially invalid because, regardless of the statutory basis, the statutory procedures were not followed: defendants cannot be arrested and incarcerated for being poor-there must be some showing of ability to pay. The State argued that exclusion was improper because there was no police misconduct; officers should be able to rely on dispatch-they cannot be the arbiters of whether a court had authority to issue a warrant because they are never in a position to question a court order. The State further argued that, where a warrant is defective but there is no police misconduct, the proper remedy is either a writ of habeas corpus or a civil suit under 42 U.S.C. § 1983. After hearing these arguments, the reviewing court ordered further briefing on the issue of whether a circuit court has competency to proceed as a municipal court pursuant to Wis. Stat. §§ 66.0114, 800.09, and 800.095.
¶ 15 On October 5, 2016, the reviewing court held its third hearing on the motion, hearing argument from the parties on that issue. Kerr argued that a circuit court could proceed under Wis. Stat. ch. 800, but that, even if this is what the issuing court had done, it still had not adhered to the procedural requirements, and a police officer cannot reasonably rely on a warrant that has no statutory basis. The State informed the reviewing court that the arrest warrant was issued pursuant to Wis. Stat. § 778.09,[12] and argued that suppression is not designed to correct judicial misconduct and would have no deterrent effect here. Kerr responded that police officers cannot be allowed to avoid suppression on a hear-no-evil-see-no-evil basis by not looking at the warrant.
¶ 16 On October 31, 2016, the reviewing court issued its decision and order granting Kerr's motion to suppress. It concluded that the issuing court had authority to issue the warrant because it has general jurisdiction under Article VII, Section 8 of the Wisconsin Constitution and *793 Wis. Stat. § 753.03 to impose and collect municipal forfeitures under Wis. Stat. §§ 66.0114(1)(c), 800.09, 800.095, 345.47(1)(a), and/or 778.10. It nonetheless concluded that the arrest warrant was defective because the issuing court did not comply with statutory procedural requirements in issuing the warrant. In this regard, the reviewing court took the issuing court to task for what it perceived to be "an institutional or administrative disregard for the law governing civil commitments."[13] The reviewing court then acknowledged that the officers engaged in no wrongdoing, also noting that "neither the defendant nor the State alleges even the slightest hint of misconduct or wrongdoing by law enforcement." It nonetheless concluded, after discussion of State v. Hess, 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568, in light of State v. Scull, 2015 WI 22, 361 Wis. 2d 288, 862 N.W.2d 562, that exclusion of the evidence was proper because the deterrent purpose of the exclusionary rule is served where the judicial misconduct is systemic.
¶ 17 On December 9, 2016, the State appealed.[14] On July 10, 2017, the State petitioned this court for bypass of the court of appeals. On October 17, 2017, the State's petition for bypass was granted.
II. STANDARD OF REVIEW
¶ 18 " 'Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact.' " State v. Tullberg, 2014 WI 134, ¶ 27, 359 Wis. 2d 421, 857 N.W.2d 120 (quoting State v. Robinson, 2010 WI 80, ¶ 22, 327 Wis. 2d 302, 786 N.W.2d 463 ). "When presented with a question of constitutional fact, this court engages in a two-step inquiry. First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." Id., ¶ 27 (citations omitted).
¶ 19 The interpretation and application of a constitutional provision are questions of law that we review de novo. See, e.g., Black v. City of Milwaukee, 2016 WI 47, ¶ 21, 369 Wis. 2d 272, 882 N.W.2d 333 (citing Appling v. Walker, 2014 WI 96, ¶ 17, 358 Wis. 2d 132, 853 N.W.2d 888 ). "When interpreting constitutional provisions and amendments, we look to intrinsic as well as extrinsic sources." State v. Williams, 2012 WI 59, ¶ 15, 341 Wis. 2d 191, 814 N.W.2d 460 (citing Buse v. Smith, 74 Wis. 2d 550, 568, 247 N.W.2d 141 (1976) ). In particular, we look to (1) the plain meaning of the words in the context used; (2) the historical analysis of the constitutional debates that the court may reasonably presume were known to the framers; (3) the prevailing practices when the provision was adopted; and (4) the earliest interpretation of the provision by the legislature, *794 as manifested in the first law passed following its adoption. Id.
III. ANALYSIS
¶ 20 There is no dispute that the exclusionary rule applies in Wisconsin. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) ; Conrad v. State, 63 Wis. 2d 616, 636, 218 N.W.2d 252 (1974). The parties before us, however, argue two competing views of when evidence must be suppressed under the exclusionary rule. The State's view is that evidence is suppressed only where suppression will likely serve to deter future police misconduct. This is, and has been, the view of the majority of this court. See Scull, 361 Wis. 2d 288, ¶¶ 47-61, 862 N.W.2d 562 (Roggensack, J., concurring, joined by Crooks, Ziegler, and Gableman, JJ.). Kerr's view is that evidence may be suppressed either where suppression serves to deter future police misconduct or where it serves to preserve "judicial integrity." The view that "judicial integrity" is a standalone justification for suppression under the exclusionary rule is error, as this view has not garnered favor among a majority of this court, nor of the United States Supreme Court.[15]
¶ 21 In fact, the Supreme Court recently reiterated that "[t]he rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236-37, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) ; see also Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("Its purpose is to deter ... by removing the incentive to disregard it."). And this purpose is punitive, not remedial. See, e.g., United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ("The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim...."); Elkins, 364 U.S. at 217, 80 S.Ct. 1437 ("The rule is calculated to prevent, not to repair."). Thus, the singular purpose of the exclusionary rule is to deter police misconduct,[16] and the exclusionary *795 rule does not apply in order to preserve judicial integrity or to correct judicial error.[17]
¶ 22 Moreover, Supreme Court precedent establishes that the manner in which the warrant was issued by the court and executed by law enforcement in this case does not afford suppression under the exclusionary rule. As noted above, see supra ¶21, for the exclusionary rule to apply, there must have been some police misconduct. Although Kerr argues that the officers' failure to look at the warrant itself constitutes such misconduct, this view is incorrect. As a practical matter, officers should be able to rely on dispatch in the same way they are able to rely on their computer records. See Arizona v. Evans, 514 U.S. 1, 14-16, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). Relatedly, absent some evidence in the record to the contrary, dispatch personnel are not "adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime." Id. at 15, 115 S.Ct. 1185. Additionally, to the extent that looking at a warrant before executing it may be best practice, the officers' conduct here is at most negligent, and isolated negligence is not "misconduct" for the purposes of the exclusionary rule. Herring v. United States, 555 U.S. 135, 146-47, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). Thus, the officers here did not engage in any misconduct that renders the evidence suppressible under the exclusionary rule.
¶ 23 The parties also make arguments regarding the good-faith exception, which applies when an "officer's conduct is objectively reasonable, [because] 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances.' " United States v. Leon, 468 U.S. 897, 919-20, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting Stone v. Powell, 428 U.S. 465, 539-40, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (White, J., dissenting) ). In Wisconsin, we have adopted the good-faith exception. See State v. Eason, 2001 WI 98, ¶ 52, 245 Wis. 2d 206, 629 N.W.2d 625 ("[A] good faith exception for objective, reasonable reliance upon a search warrant does not offend the Wisconsin Constitution [because in that situation,] applying the exclusionary rule will have no deterrent effect."). But, because the exclusionary rule applies to deter police misconduct, and there is no police misconduct here, the *796 exclusionary rule does not apply; the good-faith exception thus, also need not be further analyzed and the evidence is not excluded.
IV. CONCLUSION
¶ 24 Our overarching inquiry in this case is whether the circuit court erred in granting Kerr's motion to suppress. Fundamental to our analysis is whether evidence discovered during a search incident to arrest is properly suppressed under the exclusionary rule when there is no police misconduct. We conclude that suppression is not appropriate because the sole purpose of the exclusionary rule is to deter police misconduct, and there is no police misconduct here. Neither judicial integrity nor judicial error is a standalone basis for suppression under the exclusionary rule.[18] We therefore conclude that the circuit court's grant of Kerr's motion to suppress on the basis of judicial integrity is error.
¶ 25 Accordingly, we reverse the Bayfield County circuit court.
By the Court. -The order of the circuit court is reversed, and the cause is remanded.
ZIEGLER, J., concurs, joined by ROGGENSACK, C.J., GABLEMAN, J., and KELLY, J., (joins footnote 2) (opinion filed).
A.W. BRADLEY, J., dissents, joined by ABRAHAMSON, J. (opinion filed). R.G. BRADLEY, J., dissents (opinion filed).

The Honorable Robert E. Eaton of Ashland County issued the warrant (the "issuing court"), but, because the arrest occurred in Bayfield County, the Honorable John P. Anderson of Bayfield County presided over the motion to suppress and reviewed the warrant (the "reviewing court").

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

At the reviewing court, Kerr's arguments were somewhat different than the arguments he presented to this court. He asserted that the issuing court did not follow the requirements of Wis. Stat. ch. 818 in issuing a civil bench warrant. He also argued that, because there was no affidavit and there was no contempt in the presence of the court, there was simply no authority for this warrant to be issued. The reviewing court ordered further briefing on the issue of whether the issuing court had authority to proceed as a municipal court pursuant to Wis. Stat. §§ 66.0114, 800.09, 800.095. At the hearing on that issue, the State informed the court that the arrest warrant was issued pursuant to Wis. Stat. § 778.09, but, before this court, both parties apparently agree that Wis. Stat. § 800.095 governs the issuance of the warrant.

In so concluding, we consider whether to overrule State v. Hess, 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568. We conclude that Hess need not be overruled because the lead opinion's view in Hess of "judicial integrity" as a standalone justification for suppression under the exclusionary rule did not garner the support of a majority of the court; as such, it has no precedential value that requires reconsideration in this case.

Disorderly conduct may also be prosecuted as a crime. See Wis. Stat. § 947.01. Kerr was not charged with a crime; rather, a civil municipal ticket was issued.

This ticket, unlike some, did not require a mandatory appearance in court; instead, Kerr could avoid coming to court by paying the citation.

In his brief before this court, Kerr alleges that the notice of default judgment was not sent to him until "September of 2016." While the reviewing court decision did state that "[t]he record of [2015FO219] indicates a notice of default judgment on July 31, 2015, and then again on September 15, 2016," this is clearly in error.
The four-page record for 2015FO219, a certified copy of which is in the record before this court, is devoid of any indication of a notice sent in September of 2016, but it does reference a notice of certification sent in September of 2015. Thus, a simple review of the record reveals that such an assertion must be mistaken. Additionally, Kerr filed his motion to suppress on June 8, 2016, and in that motion did not dispute this timeline: "The warrant that had been issued in Ashland County was issued under case number [2015FO219], which was an ordinance violation case in which default judgment was issued against Mr. Kerr requiring him to pay a fine of $298.50 on July 31, 2015." Moreover, Kerr was arrested on this non-payment warrant on September 27, 2015; the criminal complaint for the Possession of Methamphetamine charge was filed October 7, 2015; and the Clerk of Court certification reflects that the reviewing court was provided the record with respect to that motion in July of 2016-all of which happened well before September of 2016.
Clearly then, it is not as argued in Kerr's brief that "the court failed to send Mr. Kerr any notice that default judgment was entered until over a year later, and after the events giving rise to this case."

The record indicates that "arrest warrant" and "commitment order" are used interchangeably in this case. This may not always be the case and we decline to decide whether a commitment order is always equivalent to an arrest warrant, as that issue was not presented for our review or briefed by the parties. We agree with the State, however, that any difference in this case is not legally significant because the order here, like an arrest warrant, required law enforcement to arrest the subject of the order.

This total reflects a local forfeiture of $263.50, a clerk's fee of $5.00, and a warrant fee of $30.00.

To be clear, these criminal charges were not the basis of the arrest warrant, which issued after Kerr failed to pay a civil municipal forfeiture ticket.

Kerr filed an amended motion to suppress on June 13, 2016. The only revision made was to type (rather than hand-write) the date and time at which the suppression motion would be heard. Otherwise the motions are identical.

Wisconsin Stat. § 778.09 states as follows:
Judgment, costs, commitment of defendant. Where judgment is recovered pursuant to this chapter it shall include costs and direct that if the judgment is not paid the defendant, if an individual, shall be imprisoned in the county jail for a specified time, not exceeding 6 months, or until otherwise discharged pursuant to law. The commitment shall issue, as in ordinary criminal actions, and the defendant shall not be entitled to the liberties of the jail.
§ 778.09.

The reviewing court's written decision makes clear, however, that, instead of relying on the facts of record, the court rested its conclusions on its own familiarity with how the issuing court "issues civil commitments [and how] the error in this case results in several, or dozens or hundreds of arrest warrants being issued in complete disregard for the applicable law." The court stated:
While there is no reason in this case to assume intentional malfeasance on the issuing court, the record from the [issuing county] case shows an institutional or administrative disregard for the law governing civil commitments. While the record does not reflect this, I am administratively aware that [the issuing county] follows the procedure that occurred in this case in almost all of its civil nonpayments. In [the issuing county], nonpayment of a civil forfeiture generally means summary issuance of a civil commitment. There may be hundreds of similar commitments of record.

The reviewing court has suspended proceedings pending the outcome of this appeal.

When "judicial integrity" has been discussed in relation to the suppression of evidence, it has been tethered to the taint of police misconduct. See, e.g., Stone v. Powell, 428 U.S. 465, 485, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (citation omitted) ("Although our decisions often have alluded to the 'imperative of judicial integrity,' they demonstrate the limited role of this justification in the determination whether to apply the rule in a particular context."); Terry v. Ohio, 392 U.S. 1, 12-13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (citation omitted) ("The rule also serves another vital function-'the imperative of judicial integrity.' ... A ruling admitting evidence in a criminal trial, we recognize, has the necessary effect of legitimizing the conduct which produced the evidence...."); State v. Tompkins, 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988) ("The protection of rights and the preservation of judicial integrity depend in reality on the deterrent effect of the exclusionary rule.").

In so concluding we consider whether to overrule Hess, 327 Wis. 2d 524, 785 N.W.2d 568. The State argues that Hess should be overruled because its view of "judicial integrity" as a standalone justification for suppression is a significant departure from United States Supreme Court precedent. Kerr argues that Hess should not be overruled because its discussion of judicial integrity as a standalone justification for suppression was correct. We conclude that Hess need not be overruled because the lead opinion's view of "judicial integrity" as a standalone justification for suppression under the exclusionary rule did not garner the support of a majority of the court.
Justice Prosser authored the lead opinion, joined by then-Chief Justice Abrahamson and Justice A.W. Bradley; Justice Ziegler concurred and filed an opinion that did not adopt the "judicial integrity" rationale of the lead opinion; Justice Gableman dissented and filed an opinion that then-Justice Roggensack joined, which specifically rejected "judicial integrity" as a standalone rationale; and Justice Crooks did not participate in the case. Justice Crooks did, however, participate in State v. Scull, 2015 WI 22, 361 Wis. 2d 288, 862 N.W.2d 562, where he joined the concurring majority in rejecting judicial integrity as a standalone rationale. Thus, Hess has no precedential value that requires reconsideration in this case.

In fact, in general, the exclusionary rule does not even apply to deter mistakes made by judicial employees:
First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.
Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate. ... Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions.
United States v. Leon, 468 U.S. 897, 916-17, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ; see also Herring v. United States, 555 U.S. 135, 142, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

In so concluding, we consider whether to overrule Hess, 327 Wis. 2d 524, 785 N.W.2d 568. We conclude that Hess need not be overruled because the lead opinion's view of "judicial integrity" as a standalone justification for suppression under the exclusionary rule did not garner the support of a majority of the court; as such, it has no precedential value that requires reconsideration in this case.