**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**October 8, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2018AP1388-CR**

Cir. Ct. No. 2018CF37

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

  V.

MICHAEL R. MCGINNIS,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Eau Claire County: WILLIAM M. GABLER, SR., Judge. *Affirmed in part, reversed in part and cause remanded for further proceedings.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    HRUZ, J. The State of Wisconsin appeals an order granting Michael McGinnis's motion to suppress evidence obtained during his arrest. The State acknowledges that there was an unlawful entry into McGinnis's residence,

and that, as a result, the circuit court properly suppressed evidence and statements the police obtained while inside the residence. The State contends, however, that because the police officer possessed probable cause to arrest McGinnis at the time of the unlawful entry, evidence and statements police subsequently gathered while outside the residence need not be suppressed.

¶2 We agree with the State and conclude that at the time of the unlawful entry into McGinnis's residence, law enforcement possessed probable cause to arrest McGinnis for operating a vehicle with a prohibited alcohol concentration (PAC). As a result, pursuant to *New York v. Harris*, 495 U.S. 14 (1990), and *State v. Felix*, 2012 WI 36, 339 Wis. 2d 670, 811 N.W.2d 775, the evidence police obtained outside of McGinnis's residence following the unlawful entry is admissible against McGinnis in his criminal prosecution. We therefore reverse, in part, the order granting McGinnis's suppression motion and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3 The relevant facts in this case are undisputed. McGinnis was charged in a four-count criminal complaint with seventh-offense operating a motor vehicle while intoxicated (OWI), hit and run of an attended vehicle, obstructing an officer, and disorderly conduct. The State subsequently filed a second amended Information that added a single count of seventh-offense PAC. These charges arose from events that transpired on the afternoon of January 6, 2018.

¶4 According to the police report, at 3:55 p.m. officer Edward Bell of the Altoona Police Department was dispatched to a report of a hit-and-run crash that had occurred at the Happy Hollow Tavern in the City of Altoona. The crash victim had called police to report that a yellow Jeep Wrangler had just struck the

2

victim's vehicle in the tavern's parking lot. The victim provided the license plate number of the Jeep and stated the vehicle had fled when he attempted to make contact with its driver.

¶5 Bell ran a records check on the vehicle and discovered that McGinnis was the registered owner of the Jeep and that his residence was a few blocks west of the Happy Hollow Tavern. Bell noted McGinnis had six previous OWI convictions, which meant McGinnis was subject to a .02 blood alcohol content restriction. *Cf.* WIS. STAT. § 340.01(46m)(c) (2017-18). From his training, Bell believed that consuming even one alcoholic beverage could raise a person's blood alcohol content beyond the .02 limit.

¶6 Bell directed another officer to collect information at the Happy Hollow Tavern while he responded directly to McGinnis's residence. Bell arrived at the residence within one minute of the dispatch. The residence was located in an apartment complex and was a downstairs unit with immediate access to the parking lot. Bell spotted a yellow Jeep with a license plate matching the victim's report parked in front of the apartment, about five to six steps from the apartment's front door.

¶7 Bell approached the apartment and could hear music and someone moving inside the residence. He knocked on the door, but he did not receive a response. After approximately thirty seconds, he knocked a second time, and an unknown individual (later identified as McGinnis) opened the door. Bell could see into the residence, and there did not appear to be any other person inside.

¶8 Bell asked McGinnis if he was the registered owner of the Jeep. McGinnis denied owning the Jeep, and, upon being asked, he also denied having been at the Happy Hollow Tavern that day. During their conversation, Bell noted

McGinnis's eyes were glassy and bloodshot, and his speech was slurred and very slow, consistent with what Bell viewed as heavy intoxication. Bell told McGinnis that witnesses had seen him at the Happy Hollow Tavern, and McGinnis responded that he did not believe anyone would have evidence he was at that location. Bell then requested identification, to which McGinnis responded that Bell did not need his driver's license.

¶9 Upon McGinnis's refusal to provide identification, Bell told McGinnis he would need to identify himself because he was being detained related to the crash investigation. Bell asked McGinnis to step out of the residence and told him he was not free to leave. McGinnis declined to step outside and then began shutting the door. Bell moved his foot and body into the door frame to prevent the door from closing all the way. McGinnis's hand was on the door frame, and Bell attempted to grab his wrist but McGinnis pulled his hand away and raised it above his head with a closed fist as if he was about to strike Bell. Bell unholstered his TASER and told McGinnis to put his hands behind his back. McGinnis then immediately turned around, walked down a hallway into a nearby bedroom, and shut the bedroom door.

¶10 Bell remained in the doorway and requested a backup officer. As that officer arrived, McGinnis exited the bedroom and approached the officers. He calmly apologized for lying to Bell and admitted that he was in fact at the Happy Hollow Tavern. After McGinnis provided identification, he was taken into custody and placed in the back of a squad car. McGinnis later consented to perform field sobriety testing but ultimately refused to complete the testing. Bell then told McGinnis he was under arrest, and McGinnis began walking away from the officers, resisted their efforts to subdue him, and had to be tased. He was then placed in handcuffs and transported to a local hospital for a blood draw.

¶11    McGinnis filed a motion alleging Bell's warrantless entry into McGinnis's apartment violated the Fourth Amendment.  Accordingly, McGinnis sought suppression of all evidence gathered after that entry, including "the results of the field sobriety exercises, the blood draw, and any statements made by Mr. McGinnis post[-]seizure."  The State defended the warrantless entry on a variety of grounds, including that there were exigent circumstances and that Bell had probable cause to arrest McGinnis before his entry based upon an apparent seventh-offense felony PAC.

¶12    The circuit court held an evidentiary hearing on the suppression motion, at which Bell testified.  At a decision hearing the following day, the court granted McGinnis's suppression motion but remarked it was an "exceedingly close case."  The court made findings consistent with the foregoing facts, and it concluded that when Bell placed his foot and body into the door frame, he had entered McGinnis's residence for Fourth Amendment purposes.  The court acknowledged that, under current Fourth Amendment case law, a warrantless in-home entry does not necessarily require the exclusion of evidence subsequently obtained outside the home.  However, it concluded that principle did not apply here because Bell did not have probable cause to arrest McGinnis at the time of his entry.

¶13    Specifically, the circuit court emphasized the sanctity of the home for Fourth Amendment purposes and reasoned that Bell merely had reasonable suspicion—not probable cause—that McGinnis had committed a PAC violation. The court acknowledged that Bell knew five things at the time he entered McGinnis's residence: (1) that it was probable that McGinnis had been at the Happy Hollow Tavern "within an hour or so before … Bell … had received the dispatch call"; (2) that it was "very likely that Mr. McGinnis's vehicle had struck

another parked vehicle in the Happy Hollow parking lot"; (3) that McGinnis had six prior OWI offenses and was subject to a .02 blood alcohol content limit; (4) that McGinnis had bloodshot eyes and slurred speech during their conversation at the front door; and (5) that McGinnis was "probably lying about not being at the Happy Hollow Tavern" recently.

¶14    The circuit court remarked, however, that "with a little bit more inquiry," Bell could have learned more details about the hit and run and the amount of alcohol McGinnis had to drink at the Happy Hollow Tavern, which would have "shed more light on whether … the defendant was intoxicated." The court concluded that, "[a]rmed with this information, the officer could have, and should have, obtained a warrant at [four or five] o'clock in the afternoon … so as to permit an arrest for Mr. McGinnis and not have to worry about the hazards of the Fourth Amendment." The State now appeals the order granting McGinnis's suppression motion.

## DISCUSSION

¶15    The Fourth Amendment to the United States Constitution provides the right of citizens to be secure against unreasonable searches and seizures. *State v. Scull*, 2015 WI 22, ¶18, 361 Wis. 2d 288, 862 N.W.2d 562; *see also* U.S. CONST. amend. IV. "Courts have long extolled the importance of the home, noting that the amendment was drafted in part to codify 'the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.'" *Scull*, 361 Wis. 2d 288, ¶19 (quoting *Payton v. New York*, 445 U.S. 573, 601 (1980)).

¶16    Under *Payton*, absent exigent circumstances, law enforcement officers may not effect a warrantless and nonconsensual entry into a person's

home, even if they possess probable cause to arrest the person. *Payton*, 455 U.S. at 590; *see also Harris*, 495 U.S. at 16. The exclusionary rule protects against violations of Fourth Amendment rights and holds that "evidence obtained in violation of the Fourth Amendment is generally inadmissible in court proceedings." *Scull*, 361 Wis. 2d 288, ¶20. However, the Supreme Court in *Harris* declined to apply the exclusionary rule for *Payton* violations to evidence gathered outside of the home. It concluded the exclusionary rule was "designed to protect the physical integrity of the home; it was not intended to grant criminal suspects … protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime." *Harris*, 495 U.S. at 17.

¶17 With the foregoing as background, the parties here agree that *Harris* and *Felix* set forth the relevant principles of law. In *Felix*, our supreme court "adopt[ed] the *Harris* exception to the exclusionary rule," concluding that the rule "appropriately balances the purposes of the exclusionary rule and the *Payton* rule with the social costs associated with suppressing evidence." *Felix*, 339 Wis. 2d 670, ¶¶38-39. Specifically, our supreme court determined that suppressing evidence and statements obtained from outside the home following a *Payton* violation did not serve to protect the physical integrity of the home from police misconduct. *Felix*, 339 Wis. 2d 670, ¶¶39-40.

¶18 The circuit court acknowledged *Felix* and other relevant authorities, but it nonetheless concluded the *Harris* exception to the exclusionary rule did not apply because Bell did not have probable cause to arrest McGinnis at the time of his unlawful entry. As a result, the court concluded all evidence and statements obtained after the entry were inadmissible. The State does not dispute that an illegal entry occurred when Bell entered McGinnis's residence, nor does it dispute

that the circuit court properly suppressed evidence and statements the police gathered while inside the residence. Rather, the State challenges the court's suppression of the evidence and statements subsequently gathered while they were outside of McGinnis's home, contending that Bell did, in fact, have probable cause to arrest McGinnis prior to his unlawful entry.

¶19 A valid arrest is predicated upon law enforcement officers having probable cause. "Probable cause to arrest is the quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime." *State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). While there must be more than a possibility or mere suspicion that the defendant committed an offense, the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. *Id.* "Probable cause is a flexible, commonsense measure of the plausibility of particular conclusions about human behavior." *State v. Kutz*, 2003 WI App 205, ¶11, 267 Wis. 2d 531, 671 N.W.2d 660; *see also State v. Delap*, 2018 WI 64, ¶35, 382 Wis. 2d 92, 913 N.W.2d 175 (noting probable cause eschews technicalities and legalisms).

¶20 Whether probable cause exists in a particular case depends on the facts and circumstances. *Secrist*, 224 Wis. 2d at 212. We apply an objective standard and are not bound by the officer's subjective assessment or motivation. *Kutz*, 267 Wis. 2d 531, ¶12. An officer's beliefs may be based in part upon hearsay information, and the officer may rely on the collective knowledge of the police agency prior to the challenged police conduct (here, Bell's entry into McGinnis's residence). *See id.*; *see also State v. McAttee*, 2001 WI App 262, ¶11, 248 Wis. 2d 865, 637 N.W.2d 774. "When a police officer is confronted with two

reasonable competing inferences, one justifying arrest and the other not, the officer is entitled to rely on the reasonable inference justifying arrest." *Kutz*, 267 Wis. 2d 531, ¶12.

¶21    Our review of an order granting or denying a motion to suppress presents a question of constitutional fact. *State v. Kerr*, 2018 WI 87, ¶18, 383 Wis. 2d 306, 913 N.W.2d 787, *cert denied*, 139 S. Ct. 848 (2019). When we are presented with a question of constitutional fact, we engage in a two-step inquiry. *Delap*, 382 Wis. 2d 92, ¶27. First, we review the circuit court's findings of historical fact using the deferential the "clearly erroneous" standard. *Id.* Second, we independently apply constitutional principles to those facts to determine whether the exclusionary rule warrants the suppression of the evidence. *Id.*

¶22    The State does not challenge any of the circuit court's factual findings as being clearly erroneous. Rather, the State argues that the factual findings made by the court were sufficient to support probable cause to arrest McGinnis for a PAC violation—i.e., that McGinnis had recently driven his vehicle while having a prohibited concentration of alcohol in this blood—prior to the time Bell entered McGinnis's apartment.[1] We agree with the State that the facts as found by the court were sufficient to support such probable cause.

¶23    Importantly, Bell was aware that McGinnis had six prior OWI convictions and that he was subject to a .02 blood alcohol content restriction. Bell

---

[1] The State has argued probable cause on the PAC violation only and has not developed any argument that Bell had probable cause to suspect McGinnis of any other crime, including the hit and run. Accordingly, we will limit our consideration to the issue the State has presented. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (observing we will not abandon our neutrality to develop arguments for a party).

also knew that the consumption of even one alcoholic beverage could raise a person's blood alcohol content beyond that limit. Bell knew that a Jeep registered to McGinnis had been recently involved in a hit and run at a tavern, and within one minute of the dispatch Bell was able to locate the Jeep parked immediately outside of the address associated with the Jeep's registration. The person who answered the door when Bell knocked was a male whom Bell believed to be heavily intoxicated based upon his slurred speech and glassy, bloodshot eyes. The male refused to identify himself, and Bell could not see any other person in the residence.

¶24 Based upon the foregoing facts—all of which were known to Bell before he entered McGinnis's residence—we agree with the State that a reasonable police officer would conclude McGinnis had recently committed a PAC violation. Specifically, a reasonable officer could strongly infer from the available evidence that McGinnis had been present at the tavern, had driven his vehicle while intoxicated (or with at least a blood alcohol content greater than .02), and had hit a vehicle in the parking lot and fled to his nearby residence. This is a "commonsense" construction of the events based on the information available to Bell, and, again, Bell was not required to draw reasonable inferences that supported McGinnis's innocence. *Kutz*, 267 Wis. 2d 531, ¶¶11-12.

¶25 McGinnis's arguments to the contrary are unpersuasive. McGinnis notes that dispatch did not provide a description of the Jeep's driver, the man who answered the door did not identify himself and denied being at the Happy Hollow Tavern, Bell did not have information that McGinnis was drinking at the Happy Hollow Tavern, and Bell did not testify as to precisely how much time had elapsed between the accident and the dispatch. He also notes that Bell did not report smelling the odor of intoxicants on McGinnis during their conversation, which he

contends "would have been prominent and noted by a police officer trained in OWI enforcement." McGinnis therefore reasons that Bell had insufficient evidence to support probable cause to believe: (1) that McGinnis was the Jeep's driver; (2) that McGinnis was the man who answered the door of the residence; and (3) that McGinnis was driving the Jeep with a prohibited blood alcohol content.

¶26 McGinnis understandably attempts to highlight some "gaps" in the information that Bell had before him, but merely pointing out what Bell did not know does not undermine the compelling inference from the available facts that McGinnis had probably committed a PAC violation. "Probable cause" is not synonymous with "near certainty." *See State v. Gralinski*, 2007 WI App 233, ¶¶22, 24, 306 Wis. 2d 101, 743 N.W.2d 448 (citing *United States v. Gourde*, 440 F.3d 1065, 1072-73 (9th Cir. 2006)). As the circuit court pointed out, Bell could have taken additional investigative steps to be more, or even completely, certain that he was speaking to McGinnis, that McGinnis had been drinking at the tavern, and that it was McGinnis who was behind the wheel of the Jeep at the time of the accident. But as to whether such facts were necessary to establish probable cause, the State is not required to provide more facts than are necessary to show a "fair probability" that McGinnis had committed a crime. *See Gourde*, 440 F.3d at 1072-73.

¶27 Having concluded that Bell had probable cause to arrest McGinnis for a PAC violation at the time of his unlawful entry, we conclude the circuit court erred by granting McGinnis's suppression motion in whole. Under *Harris* and *Felix*, only evidence obtained from inside McGinnis's residence following Bell's entry need be suppressed. *See Harris*, 495 U.S. at 17; *Felix*, 339 Wis. 2d 670, ¶¶38-39. The evidence and statements obtained outside the residence are

11

admissible in McGinnis's prosecution for the crimes at issue.[2]  We therefore reverse, in part, the order granting McGinnis's suppression motion and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded for further proceedings.

Not recommended for publication in the official reports.

---

[2]  Again, the State concedes that the circuit court properly suppressed any evidence and statements gathered inside the residence following Bell's unlawful entry.