COURT OF APPEALS
DECISION
DATED AND FILED

August 27, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2015AP2250-CR**

Cir. Ct. No. 2013CF530

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

GILBERTO CASTANEDA-BOBADILLA,

    DEFENDANT-APPELLANT.

       APPEAL from a judgment of the circuit court for Fond du Lac County: RICHARD J. NUSS, Judge. *Affirmed*.

       Before Blanchard, Kloppenburg, and Graham, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM  This case arises from a 2012 warrantless blood draw that police ordered performed on Gilberto Castaneda-Bobadilla while he was unconscious in the hospital after he was involved in a fatal car crash.  On appeal, Castaneda-Bobadilla argues that the blood draw was an unlawful search in violation of his Fourth Amendment rights and that evidence obtained from the blood draw should be suppressed under the exclusionary rule.  Because we conclude that the good faith exception to the exclusionary rule precludes suppression of evidence obtained from the blood draw, we affirm.

## BACKGROUND

¶2     A car that Gilberto Castaneda-Bobadilla was driving crashed into a tree on November 16, 2012.  Castaneda-Bobadilla and one passenger were seriously injured; a second passenger was killed.  Castaneda-Bobadilla was transported by helicopter to an area hospital.  Officers at the scene discovered marijuana and associated paraphernalia in the car driven by Castaneda-Bobadilla.

¶3     At the hospital, approximately two hours after the accident, and while Castaneda-Bobadilla was unconscious, his blood was drawn without a warrant at the responding officer's direction.  The blood draw was then authorized by a provision of Wisconsin's implied consent law, WIS. STAT. § 343.305 (3)(ar)1. (2017-2018),[1] ("the incapacitated driver provision").

¶4     Analysis revealed that Castaneda-Bobadilla's blood contained 3.7 ug/L of THC.  Castaneda-Bobadilla was charged with homicide by use of a

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.  We discern, and the parties identify, no changes to the statutes since the 2012 accident that matter to the issues on appeal.

vehicle with a detectable amount of a restricted controlled substance in his blood, in violation of WIS. STAT. § 346.63(1)(a).

¶5 Castaneda-Bobadilla moved to suppress the results of the blood test, arguing that the blood draw was conducted in violation of his Fourth Amendment rights against unreasonable search and seizure. The circuit court held a hearing and denied the motion, concluding that the blood draw was authorized by the incapacitated driver provision and also by the exigent circumstances exception to the Fourth Amendment's warrant requirement. The court also concluded that, even if the blood draw had been performed unlawfully, the good faith exception to the exclusionary rule precluded suppression of the results of the blood test because the officer directing the blood draw relied in objective good faith on Wisconsin's incapacitated driver provision.

¶6 Castaneda-Bobadilla subsequently pleaded no contest to homicide by negligent operation of a vehicle and injury by intoxicated use of a vehicle. He now appeals the circuit court's order denying his motion to suppress evidence obtained from the warrantless blood draw.

**DISCUSSION**

¶7 Castaneda-Bobadilla makes three arguments on appeal: (1) the Wisconsin Statute authorizing warrantless blood draws from incapacitated drivers is unconstitutional; (2) the exigent circumstances exception to the Fourth Amendment's warrant requirement does not apply in this case; and (3) the officer who ordered the blood draw could not have acted in objective good faith reliance on Wisconsin's incapacitated driver provision. We first summarize the applicable standard of review and general legal principles and then address each of Castaneda-Bobadilla's arguments in turn.

3

*I. Applicable Standard of Review and General Legal Principles.*

¶8 We review a motion to suppress under a two-prong analysis: first, we review the circuit court's findings of historical fact and uphold them unless they are clearly erroneous; second, we review the application of constitutional principles to those facts de novo. **State v. Eason**, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. *Cf., State v. Felix*, 2012 WI 36, ¶22, 339 Wis. 2d 670, 811 N.W.2d 775 (citations omitted).

¶9 The Fourth Amendment to the United States Constitution guarantees that the "right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ...." U.S. CONST. amend. IV. "A warrantless search is unreasonable, and therefore unconstitutional, unless it falls within one of the 'specifically established and well-delineated exceptions to the Fourth Amendment's warrant requirement.'" **State v. Prado**, 2020 WI App 42, ¶10, __ Wis. 2d__, __ N.W.2d__ (quoted source omitted).

*II. The Constitutionality of Wisconsin's Incapacitated Driver Provision.*

¶10 Castaneda-Bobadilla first argues that Wisconsin's incapacitated driver provision, authorizing warrantless blood draws from incapacitated drivers without any need to show one of the established exceptions, is unconstitutional. This argument has been resolved by our decision in **Prado**, in which we concluded

that the incapacitated driver provision is indeed unconstitutional under ***Birchfield v. North Dakota***, 136 S. Ct. 2160 (2016).[2]  ***Prado***, __ Wis. 2d__, ¶37.

### III.  *The Exigent Circumstances Exception to the Warrant Requirement.*

¶11     Castaneda-Bobadilla next argues that the circuit court erred in denying his motion based on the exigent circumstances exception to the warrant requirement.   An exigent circumstance is present when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment; the loss of evidence created by the rapid dissipation of alcohol constitutes an exigent circumstance in some cases.  ***State v. Parisi***, 2016 WI 10, ¶¶29, 48-49, 367 Wis. 2d 1, 875 N.W.2d 619 (citing ***Missouri v. McNeely***, 569 U.S. 141, 131 S. Ct. 1552 (2013)).   Castaneda-Bobadilla points to the record showing that police observed evidence of marijuana, not alcohol, and cites articles for the proposition that unlike alcohol, marijuana is detectable in the blood for two to three days after use.  We do not address this issue and assume, without deciding, that no exigent circumstances were present in this case.

### IV.  *The Good Faith Exception to the Exclusionary Rule.*

¶12     We now turn to Castaneda-Bobadilla's argument that the officer ordering the blood draw could not have acted in objective good faith reliance on

---

[2] We stayed this appeal for more than three years pending resolution of other Wisconsin appeals that involved challenges to the constitutionality of the incapacitated driver provision pursuant to which the officer directed the warrantless blood draw in this case.  At the parties' request, we ordered supplemental briefing addressing the United States Supreme Court's decision in ***Mitchell v. Wisconsin***, 139 S. Ct. 2525 (2019).  After those briefs were filed, this court issued its decision in ***Prado***.

Wisconsin's incapacitated driver provision. As we explain, we conclude that the officer who ordered the warrantless blood draw did so in objective good faith reliance on Wisconsin's incapacitated driver provision, which was then good law.

¶13 Evidence obtained without a warrant, in the absence of a warrant exception, is generally inadmissible in court proceedings under the exclusionary rule. *Mapp v. Ohio*, 367 U.S. 643, 81 S .Ct. 1684 (1961); *State v. Scull*, 2015 WI 22, ¶23, 361 Wis. 2d 288, 862 N.W.2d 562. The exclusionary rule is designed to "safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Arizona v. Evans*, 514 U.S. 1, 10, 115 S. Ct. 1185 (1995); *Scull*, 361 Wis. 2d 288, ¶20. The "prime purpose" of the exclusionary rule is to deter unlawful police conduct. *United States v. Calandra*, 414 U.S. 338, 347, 94 S. Ct. 613 (1974); *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160 (1987).

¶14 An exception to the exclusionary rule exists in cases when police officers act in objectively reasonable reliance on a statute authorizing their conduct, unless "the legislature wholly abandoned its responsibility to enact constitutional laws" or the statute's provisions "are such that a reasonable officer should have known that the statute was unconstitutional." *Krull*, 480 U.S. at 355. Where an officer relies in objective good faith on an apparently constitutional statute that is later declared unconstitutional, little deterrent benefit is achieved by applying the exclusionary rule. *State v. Dearborn*, 2010 WI 84, ¶44, 327 Wis. 2d 252, 786 N.W.2d 97; *Krull*, 480 U.S. at 349. Similarly, searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule. *Davis v. United States*, 564 U.S. 229, 241 (2011).

¶15     This court addressed the relationship of the good faith exception to Wisconsin's now-invalidated incapacitated driver provision in **Prado**. In **Prado**, the defendant appealed the circuit court's order denying her motion to suppress the evidence obtained from a warrantless blood draw performed while she was unconscious. In December 2014, the time of the blood draw in **Prado**, such a blood draw was authorized by Wisconsin's incapacitated driver provision. **Prado**, __ Wis. 2d__, ¶18 n.4. Also at that time, binding appellate precedent in **State v. Wintlend**, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745, provided that drivers gave implied consent at the time they applied for a Wisconsin license and that this implied consent itself constituted an exception to the Fourth Amendment. **Prado**, __ Wis. 2d__, ¶34.

¶16     In **Prado** we analyzed United States Supreme Court and Wisconsin case law to determine whether the officer who directed the 2014 blood draw did so in objective good faith reliance on Wisconsin's incapacitated driver provision and on **Wintlend**. We concluded that **Birchfield**'s 2016 holding overruled **Wintlend**, but noted that, in 2014, "**Wintlend** was the law in Wisconsin and had not yet been overruled by **Birchfield**." **Prado**, __ Wis. 2d__, ¶71.

¶17     We also considered whether the United States Supreme Court's 2013 decision in **McNeely**, 569 U.S. 141, rendered the unconscious driver provision "clearly unconstitutional" under **Krull**, 480 U.S. 340. **Prado**, __ Wis. 2d__, ¶72. This question was of particular importance because **McNeely** was decided before the 2014 blood draw at issue in **Prado**. We concluded that "**McNeely** clarified the law on the warrant exception for exigent circumstances, but it did not clearly address whether or how the "consent" implied by implied consent law can satisfy a warrant exception." **Id.**

7

¶18 Finally, we discussed whether this court's decision in *State v. Padley*, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, could have put a reasonable officer on notice regarding the unconstitutionality of the incapacitated driver provision. We stated:

> We recognize that *Padley* had been decided six months before Prado's blood draw, and that…a careful reader of *Padley* might have drawn conclusions about the constitutionality of the incapacitated driver provision. However … we cannot overrule our own precedent. *Padley* may have been in conflict with the earlier *Wintlend*, but it could not and did not overrule it. Accordingly, we cannot conclude that at the time Prado's blood was drawn, an objectively reasonable officer would have read *Padley* to mean that the incapacitated driver provision was unconstitutional.

*Prado*, __ Wis. 2d__, ¶71 n.26.

¶19 The application of the good faith exception is clearer here than it was in *Prado*. Because the blood draw in this case occurred in November 2012, before both *Padley* and *McNeely* were issued, a reasonable officer would not have had even a hint that Wisconsin's incapacitated driver provision might be ruled unconstitutional. Applying the exclusionary rule in this case, where the officer relied on an objectively reasonable belief that the blood draw did not violate the Fourth Amendment, does not achieve any deterrence purpose. Accordingly, we

conclude that, as in *Prado*, the good faith exception applies to preclude suppression of the blood test results in this case.[3]

¶20    As part of his good faith argument, Castaneda-Bobadilla contends that the blood test results in this case should be suppressed because the blood draw was performed "pursuant to a constitutionally suspect police policy." As evidence of a suspect policy, Castaneda-Bobadilla points to the responding officer's testimony indicating that she ordered the blood draw because "any time there's an accident with injuries per our policy we have a blood draw." However, the officer's subjective motivation is not relevant to the objective "good faith" analysis set forth above, and, therefore, we reject this argument as inapt. *See United States* **v.** *Leon*, 468 U.S. 897, 923 n.23 (1984) (Good-faith inquiry confined to objectively ascertainable question of whether a reasonably well-trained officer would have known that the search was illegal.).

---

[3] The State argues, and Castaneda-Bobadilla disputes, that the responding officer here was also justified in ordering the warrantless blood draw under *State v. Bohling*, 173 Wis. 2d 529, 494, N.W.2d 399 (1993), which ruled that a warrantless blood draw satisfies the exigent circumstances warrant requirement in cases where a person is lawfully arrested for drunk driving or where there is a clear indication that the blood draw will produce evidence of intoxication. Although *Bohling* was overruled by *Missouri v. McNeely*, 569 U.S. 141 (2013), it was good law at the time of the blood draw in this case. However, its holding was limited to the exigencies created by the rapid dissipation of *alcohol* from a person's bloodstream, not marijuana. *Id.* As we have explained, we do not reach this issue and, therefore, we need not resolve the State's good faith argument based on *Bohling* because we rest our decision on the good faith exception. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

**CONCLUSION**

¶21    For all these reasons, we conclude that the officer who ordered the warrantless blood draw in November 2012 acted in objective good faith reliance on the incapacitated driver provision.  Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.