COURT OF APPEALS
DECISION
DATED AND FILED

March 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1180-CR**

Cir. Ct. No. **2023CT285**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

ALEX MARK HAGEN,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Reversed and cause remanded.*

¶1    KLOPPENBURG, P.J.[1]  The State of Wisconsin appeals the circuit court's order granting Alex Mark Hagen's motion to suppress evidence arising from the extension of a traffic stop.  The court determined that the arresting officer lacked reasonable suspicion to extend the traffic stop to administer field sobriety

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

tests and, therefore, granted Hagen's motion to suppress the field sobriety test results and subsequent evidence of operating a motor vehicle while under the influence of an intoxicant and operating with a prohibited alcohol concentration. The State argues that the court erroneously granted the motion to suppress.

¶2     I conclude that the officer properly extended the stop to investigate whether Hagen was operating a motor vehicle while under the influence of an intoxicant because the totality of the facts and circumstances gave rise to reasonable suspicion of that offense.  Accordingly, I reverse the circuit court's order and remand for further proceedings.

## BACKGROUND

¶3     The State filed a criminal complaint charging Hagen with operating a motor vehicle while under the influence of an intoxicant and operating with a prohibited alcohol concentration, both as a second offense, based on evidence obtained following the extension of a traffic stop for a stop sign violation.  Hagen filed a suppression motion arguing that the arresting officer unlawfully extended the traffic stop when the officer asked Hagen to step out of his truck to perform field sobriety tests.  Hagen sought suppression of all evidence obtained during and after the field sobriety tests.

¶4     The circuit court held a hearing on Hagen's motion to suppress, at which the State offered the testimony of officers Charles Fah and Walker Stoner of the Holmen Police Department, as well as squad car and body camera video recordings of the interaction.

¶5     Fah testified as follows.  On a rainy evening shortly after 8:00 p.m. on October 12, 2023, Fah observed a pickup truck fail to make a stop at a stop sign

2

at the end of an off-ramp onto a county road. Fah followed the truck and initiated a traffic stop for the violation. While the truck was pulling over to the shoulder of the road, Fah observed the driver "reaching around in the center console area" of the truck, and he called for backup. The truck's front and rear passenger-side tires went over the curb and onto the grass, and the rear passenger-side tire remained on the curb after the truck stopped.

¶6     When Fah made contact with the driver, identified as Hagen, he observed a sweatshirt laid over the truck's center console area, where Fah had seen Hagen "reaching around," and a cooler in the back seat. He also smelled an "odor of intoxicants emitting from inside the [truck]."

¶7     Fah's body camera video of the stop records Hagen denying having had any drinks and denying "digging" around when he was being pulled over. Fah then returned to his squad car.

¶8     Stoner, who had been a police officer for approximately two months at the time of the incident, testified as follows. When Stoner and his field training officer responded to Fah's request for backup, Fah shared additional details from the initial interaction he had with Hagen. Fah's body camera video records Fah saying, "I feel like I was getting odor, but the truck was also running, and I had him shut it off," and, "he was digging super hard in the center when he was stopping, and there was like a sweatshirt covering something, so just watch out." Stoner testified that Fah also told the officers that he "had seen or had observed intoxicants."

¶9     Stoner further testified as follows. He approached the truck, where he saw "an open box of Busch Lights" in the back seat of the truck's cab. He noted a "slight odor of intoxicants coming from the [truck]" when he spoke with

Hagen, and he observed a sweatshirt covering something on the passenger seat. Hagen had "watered-over, glossy eyes" and "a slight slur to his speech." Hagen "made complete sense" during conversation with Stoner. Based on his and Fah's observations, Stoner asked Hagen to step out of his truck to perform field sobriety tests.

¶10 After hearing the officers' testimony and watching the body camera and squad car video recordings, the circuit court made findings and discussed their significance as follows.

¶11 Bad driving: The circuit court acknowledged the facts indicating that Hagen engaged in bad driving but gave those facts little weight. As for Hagen's failure to stop at the stop sign, the court initially stated, "I just want to make sure that the record is clear that I … was not able to notice from the video that there was or was not a stop. There was another car going in front of [Hagen's truck] at the time." But, the court also stated that the officer "should have … give[n] [Hagen] the ticket for … running the stop sign and [let him] be on his way." As for Hagen going up over the curb while pulling over for the traffic stop, the court "did not see a problem" with the manner in which Hagen pulled over, because it is safer for the approaching officer for the vehicle to be farther out of the road and "under the law you're supposed to remove your vehicle from the roadway so that it is not a hindrance."

¶12 Odor of intoxicants: The circuit court similarly acknowledged the facts indicating that the officers detected an odor of intoxicants but gave those facts little weight. The court found that the officers detected an odor of intoxicants in the truck and thought there was an odor of intoxicants coming from Hagen. But, the court also found that the odor of intoxicants could not

"specifically be attributed to" Hagen, because it was "some random smell of alcohol" and it was "kind [of] a filthy pickup truck." The court stated that "neither one of th[e] officers was definitive on" the smell, "[s]o this isn't even a[n] odor of intoxicant. This is we think we have an odor of intoxicant."

¶13 Furtive movements in console area: The circuit court implicitly credited Fah's testimony that Hagen was "digging" around in the center console area as he pulled over and that the console area where Hagen was "digging" was covered by a sweatshirt when Fah approached the truck. But, the court suggested that the officer could have "asked for permission to see what's underneath that center console which he was supposedly so concerned about."

¶14 In addition, the circuit court made an explicit finding that Hagen "communicate[d] clearly" and was "able to not only conduct a reasonable conversation, but … was able to be very coherent in his conversation." The court did not hear "any slow or slurring [speech]." The court also made an explicit finding that "there [was] no beer in the cab compartment of the pickup truck." The court did not address Stoner's testimony that he observed Hagen's "watered-over, glossy eyes."

¶15 The circuit court concluded that the officers did not have reasonable suspicion to support the extension of the investigatory stop to administer field sobriety tests at the time that Stoner directed Hagen to step out of his truck. Accordingly, the court granted Hagen's motion to suppress.

¶16 The State appeals.

## DISCUSSION

¶17    Hagen concedes that Fah had reasonable suspicion to support the initial traffic stop.[2]  The parties' dispute centers on the extension of the stop, and both parties agree that this analysis focuses on whether Stoner had reasonable suspicion that Hagen was operating a vehicle while under the influence of an intoxicant at the time that Stoner directed Hagen to step out of his truck to perform field sobriety tests.  As I explain below, I conclude that the extension of the stop to administer field sobriety tests was supported by reasonable suspicion, and, therefore, I reverse the circuit court's order granting Hagen's suppression motion.

## I.  Standard of Review

¶18    This court analyzes the grant or denial of a suppression motion under a two-part standard of review.  *State v. Scull*, 2015 WI 22, ¶16, 361 Wis. 2d 288, 862 N.W.2d 562.  First, we uphold the circuit court's findings of fact unless they are clearly erroneous.  *Id.*  A finding of fact "is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'"  *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (quoted source omitted).  Second, we independently review whether those facts warrant suppression.  *Scull*, 361 Wis. 2d 288, ¶16.  Put differently, we review de novo the ultimate question of "whether the facts as found by the [circuit] court

---

[2] Hagen's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs.  *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover").  This rule was amended in 2021, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format and are electronically stamped with page numbers when they are accepted for eFiling.  As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief.  S. CT. ORDER 20-07 cmt. at x1.

meet the constitutional standard." ***State v. Hindsley***, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48.

## II. Applicable Legal Principles

¶19 The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect individuals against unreasonable searches and seizures.[3] Under the Fourth Amendment, police may conduct an investigative traffic stop if they reasonably believe that a traffic violation has been committed. ***State v. Betow***, 226 Wis. 2d 90, 93, 593 N.W.2d 499 (Ct. App. 1999). A traffic stop becomes "'unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket." ***Rodriguez v. United States***, 575 U.S. 348, 350-51 (2015) (quoted source omitted; alteration in ***Rodriguez***).

¶20 "If, during a valid traffic stop, the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's intervention in the first place, the stop may be extended and a new investigation begun." ***Betow***, 226 Wis. 2d at 94-95. Such "[a]n expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion." ***State v. Hogan***, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124.

---

[3] The Fourth Amendment to the United States Constitution states, "The right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …." Article I, Section 11 of the Wisconsin Constitution provides, "The right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause …."

¶21    To be constitutionally permissible, an extension of a stop to perform field sobriety testing must be supported by reasonable suspicion; that is, it must be "based on more than an officer's 'inchoate and unparticularized suspicion or hunch.'" *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)); *State v. Colstad*, 2003 WI App 25, ¶19, 260 Wis. 2d 406, 659 N.W.2d 394.  The officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant'" the extension of the stop.  *Post*, 301 Wis. 2d 1, ¶10 (quoting *Terry*, 392 U.S. at 21).  "Reasonable suspicion depends on the totality of the circumstances[,] … [with] the whole picture viewed together." *State v. Nimmer*, 2022 WI 47, ¶24, 402 Wis. 2d 416, 975 N.W.2d 598 (citations and internal quotation marks omitted).

¶22    "The question of what constitutes reasonableness is a common sense test." *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996).  "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of [the officer's] training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *Post*, 301 Wis. 2d 1, ¶13.  Behavior that may have an innocent explanation can still give rise to reasonable suspicion.  *Hogan*, 364 Wis. 2d 167, ¶36.

### III.  Analysis

¶23    From the legal principles summarized above, it follows that the extension of the stop here was constitutionally permissible if, at the moment Stoner directed Hagen to step out of his truck to perform field sobriety tests, there existed "'factors which, in the aggregate, amount to reasonable suspicion that [Hagen] committed a crime the investigation of which would be furthered by [his]

performance of field sobriety tests.'" *See State v. Adell*, 2021 WI App 72, ¶18, 399 Wis. 2d 399, 966 N.W.2d 115 (quoting *Hogan*, 364 Wis. 2d 167, ¶37). Here, Stoner had a sufficient basis to extend the stop because the totality of the factors present at the time Stoner directed Hagen to step out of his truck to perform field sobriety tests would warrant a reasonable officer to suspect that Hagen "ha[d] committed, was committing, or [was] about to commit" the offense of operating while under the influence of an intoxicant. *See Post*, 301 Wis. 2d 1, ¶13.

¶24 As summarized above, the following facts supporting reasonable suspicion were present at the time Stoner directed Hagen to step out of his truck to perform field sobriety tests, based on the circuit court's implicit and explicit factual findings and Fah's squad car video recording.

¶25 Hagen engaged in bad driving. First, Hagen failed to stop at a stop sign. As noted above, the circuit court was equivocal on this fact. However, to the extent the court found that it was unclear whether Hagen stopped at the stop sign, I conclude, based on my review of Fah's squad car video recording, that this finding is clearly erroneous. The video recording makes it clear that Hagen failed to stop at the stop sign because his truck moved at a rate of speed around the turn that is incongruent with the truck having come to a complete stop. *See Phelps*, 319 Wis. 2d 1, ¶39 (a finding of fact "is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence'" (quoted source omitted)). Second, Hagen drove over the curb while pulling over for the traffic stop.

¶26 Hagen's "bad driving," namely rolling through a stop sign and then driving over the curb when he moved to the shoulder of the road, is a factor that supports reasonable suspicion. *See State v. Gaudesi*, 112 Wis. 2d 213, 221, 332 N.W.2d 302 (1983) (noting that "erratic driving may be evidence that the

defendant is under the influence of an intoxicant"); *see also* ***State v. Socha***, Nos. 2021AP1083-CR and 2021AP2116-CR, unpublished slip op. ¶2 (WI App Apr. 25, 2023) (defendant's "swerving and running a stop sign," along with other indicators, supported an investigation of operating while intoxicated).[4] While the circuit court observed that there were innocent explanations for Hagen's pulling over the curb, an officer need not rule out innocent explanations in evaluating reasonable suspicion of impairment. *See* ***Hogan***, 364 Wis. 2d 167, ¶¶36, 50. A reasonable officer could believe that the manner in which Hagen pulled over suggests that Hagen did not intend to pull up and over the curb for the sake of the officer's safety, as the court surmised: while the truck's rear passenger-side tire remained on the curb when Hagen finally stopped, the front passenger-side tire came back off the curb. Both driving incidents reasonably suggest impairment and, accordingly, weigh in favor of reasonable suspicion.

¶27 The officers smelled an odor of intoxicants coming from Hagen's truck. An odor of intoxicants coming from Hagen's truck is also a factor that supports reasonable suspicion. *See* ***County of Jefferson v. Renz***, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999) (noting that an odor of intoxicants in a car supports probable cause to administer a preliminary breath test). An odor of intoxicants, even a slight one, may add to a finding of reasonable suspicion. ***State v. Kothbauer***, No. 2020AP1406-CR, unpublished slip op. ¶33 (WI App May 3, 2022); ***State v. Glover***, No. 2010AP1844-CR, unpublished slip op. ¶¶18-19 (WI App Mar. 24, 2011). When viewed in isolation, the individual fact that there was an odor of intoxicants may not be sufficient to warrant a reasonable police officer to suspect that Hagen was driving while impaired. *See* ***State v. Meye***,

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored unpublished opinions issued after July 1, 2009, for their persuasive value).

No. 2010AP336-CR, unpublished slip op. ¶6 (WI App July 14, 2010) (noting that an "odor of intoxicants alone is insufficient to raise reasonable suspicion to make an investigatory stop"). However, "such facts accumulate," and reasonable inferences about the cumulative effect may be drawn as they accumulate. *Post*, 301 Wis. 2d 1, ¶37. Here, an odor of intoxicants coming from inside Hagen's truck weighs in favor of reasonable suspicion.

¶28 Fah observed Hagen "digging" in the center console area while Hagen was pulling over and, when Fah approached the truck, he saw a sweatshirt covering the truck's center console area where he had seen Hagen "digging around." Hagen's digging around in the center console area of his truck when pulling over is another factor supporting reasonable suspicion. *Cf. State v. Coffee*, 2020 WI 53, ¶35, 391 Wis. 2d 831, 943 N.W.2d 845 (furtive movements may indicate the occupant of an automobile is attempting to conceal evidence, for purposes of determining whether there is reasonable suspicion that the vehicle contains evidence of the offense of arrest). It would be reasonable for an officer to infer from Fah's observations that Hagen may be attempting to conceal evidence of drinking. Therefore, this factor weighs in favor of reasonable suspicion.

¶29 Taken together, these facts support reasonable suspicion that Hagen was operating while under the influence of an intoxicant. In other words, Hagen's bad driving, an odor of intoxicants coming from Hagen's truck, and Hagen's digging consistent with concealing something in the center console area are sufficient "'articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]'" the extension of the stop to investigate operating while under the influence of an intoxicant. *See Post*, 301 Wis. 2d 1, ¶10 (quoting *Terry*, 392 U.S. at 21).

¶30 Hagen argues that his digging in the center console area does not support reasonable suspicion because the officer testified that his concern about this digging was related to officer safety. However, the test for reasonable suspicion is an objective test, based on what a reasonable officer could believe, *Waldner*, 206 Wis. 2d at 56, and, as explained, furtive movements may indicate that the occupant of an automobile is attempting to conceal evidence, *Coffee*, 391 Wis. 2d 831, ¶35. Moreover, when behavior may give rise to multiple reasonable inferences, officers, and this court, may choose the inference that would support reasonable suspicion. *See Hogan*, 364 Wis. 2d 167, ¶50 (explaining that "[t]he possibility that [alternative] explanations may exist for observed behavior does not preclude a finding of reasonable suspicion").

¶31 Hagen asserts that the circuit court "made specific factual findings that virtually none of the[] factors were proven by the state during the hearing." However, as to the factors discussed above, the record shows otherwise.

¶32 Hagen also argues that this court is bound by the weight that the circuit court gave to these factors: that the truck driving over the curb "was not an issue"; that the odor could not "specifically be attributed to [Hagen]" and "was not sufficient for reasonable suspicion"; and that the officers could have asked more questions about looking under the sweatshirt covering the console area. However, this court reviews independently whether the facts suffice to establish reasonable suspicion. *See State v. Robinson*, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463 (this court independently applies constitutional principles to the facts found by the circuit court). As explained above, on my independent review, I conclude that these facts taken together "meet the constitutional standard" for reasonable suspicion that Hagen was operating while under the influence of an intoxicant. *See Hindsley*, 237 Wis. 2d 358, ¶22.

12

**CONCLUSION**

¶33    For the reasons set forth above, I reverse the circuit court's order granting Hagen's motion to suppress evidence of the field sobriety tests and subsequent evidence of intoxication and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.